**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                  Date:  April 30, 2018

Title: ROBERT K. RUEGSEGGER ET AL. V. CALIBER HOME LOANS, INC. ET AL.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Deborah Goltz | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):   ORDER GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS [39, 43, 45, 46] AND DENYING DEFENDANTS' MOTION TO STRIKE [38]**

Before the Court is Defendants'—Defendant ARLP Securitization Trust Series 2014-2 ("ARLP"), Altisource Residential Corporation ("Altisource"), Caliber Home Loans, Inc. ("Caliber"), LSF9 Master Participation Trust ("LSF9"), U.S. Bank Trust, N.A. ("U.S. Bank"), Wilmington Trust, N.A. ("Wilmington Trust"), Resi Whole Loan IV, LLC ("Resi"), Ocwen Loan Servicing, LLC ("Ocwen"), and Law Offices of Les Zieve ("Zieve") (collectively, "Defendants")—Joint Motion to Strike ("Motion to Strike") (Dkt. 38-1), and Joint Motion to Dismiss ("Motion to Dismiss") (Dkt. 39-1). Also before the Court is Ocwen's Supplemental Motion to Dismiss ("Ocwen Motion") (Dkt. 43-1), Resi's Supplemental Motion to Dismiss ("Resi Motion") (Dkt. 46), Zieve's Supplemental Motion to Dismiss ("Zieve Motion") (Dkt. 45), Caliber's Supplemental Memorandum of Law ("Caliber Memo") (Dkt. 40), and Defendants Altisource, ARLP, and Wilmington Trust's Supplemental Memorandum of Law ("Trust Memo") (Dkt. 41).

The Court finds this matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. Having reviewed the papers and considered the Parties'

Case No. SA CV 17-0907-DOC (KESx)                              Date: April 30, 2018
                                                              Page 2

arguments, the Court hereby GRANTS IN PART and DENIES IN PART Defendants'
Joint Motion to Dismiss, DENIES Defendants' Joint Motion to Strike, GRANTS IN
PART Ocwen's Motion to Dismiss, GRANTS IN PART Resi's Motion to Dismiss, and
GRANTS IN PART and DENIES IN PART Zieve's Motion to Dismiss.

## I.      Background

### A.      General Principles Governing California Real Estate Law

"In California, the financing or refinancing of real property generally is
accomplished by the use of a deed of trust." *Orcilla v. Big Sur, Inc.*, 244 Cal. App. 4th
982, 994 (Cal. Ct. App. Feb. 11, 2016); *see also* 5 Harry D. Miller & Marvin B. Starr,
*California Real Estate*, § 13:1 (4th ed., Dec. 2017 update) (hereinafter "*Miller & Starr*")
("[T]he deed of trust has become the generally accepted and preferred security device in
California.").

"There are three parties in the typical deed of trust: the trustor (debtor), the
beneficiary (lender), and the trustee." *Biancalana v. T.D. Service Co.*, 56 Cal. 4th 807,
813 (Cal. 2013). "Under a deed of trust, the borrower, or trustor, conveys nominal title to
property to an intermediary, the trustee, who holds that title as security for repayment of
the loan to the lender, or beneficiary." *Orcilla*, 244 Cal. App. 4th at 994 (internal
quotation marks and citation omitted). Also, a "loan servicer" is an entity that collects
periodic payments due under the promissory note and "performs other mortgage loan
servicing obligations." *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149,
1152 n.2 (Cal. 2011).

"The customary provisions of a valid deed of trust include a power of sale clause,
which empowers the beneficiary-creditor to foreclose on the real property security if the
trustor-debtor fails to pay back the debt owed under the promissory note." *Jenkins v. JP
Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 508 (Cal. Ct. App. May 17, 2013),
*disapproved of on other grounds by, Yvanova v. New Century Mortgage Corp.*, 62 Cal.
4th 919, 943 (Cal. 2016); *see also Miller & Starr* § 13:1. Accordingly, "the function and
purpose of deeds of trust and mortgages are identical, and except for the passage of title
for the purpose of the trust, deeds of trust are practically and substantially only mortgages
with a power of sale[.]" *Aviel v. NG*, 161 Cal. App. 4th 809, 816 (Cal. Ct. App. Feb. 28,
2008) (internal quotation marks omitted).

A promissory note "remains negotiable even though it is secured by a deed of
trust," and thus, the secured debt may be transferred or assigned at any time. *Miller &
Starr* § 13:41. The California Supreme Court has recently explained that the borrower

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                    Date: April 30, 2018
                                                          Page 3

generally will not have grounds to object to the assignment of a promissory note and deed of trust:

> A promissory note is a negotiable instrument the lender may sell without notice to the borrower. The deed of trust, moreover, is inseparable from the note it secures, and follows it even without a separate assignment . . . A deed of trust may thus be assigned one or multiple times over the life of the loan it secures. But if the borrower defaults on the loan, only the current beneficiary may direct the trustee to undertake the nonjudicial foreclosure process.

*Yvanova*, 62 Cal. 4th at 927—28; *see also Creative Ventures v. Jim Ward & Assoc.*, 195 Cal. App. 4th 1430, 1445 (Cal. Ct. App. May 31, 2011) (a promissory note is a negotiable instrument that the lender may sell without notice to the borrower).

### B.     The Parties

Unless otherwise noted, the following facts are taken from the operative complaint, Plaintiffs' First Amended Complaint ("FAC") (Dkt. 16).

Plaintiffs Mr. Robert Ruegsegger and Ms. Gigi Ruegsegger (the "Plaintiffs") are California citizens who reside in Orange County, California. *Id*. ¶¶ 17—18. Defendants Caliber and Ocwen acquire and service mortgage loans, including the loan obtained by Plaintiffs that is the subject of this lawsuit. *See id*. ¶¶ 19, 22. Defendant LSF9 is a securitized trust, which purports to be the current legal owner and beneficiary of the promissory note executed by Plaintiffs (the "Promissory Note"). *Id*. ¶ 21. Defendant U.S. Bank acts as trustee on behalf of Defendant LSF9. *Id*. ¶ 20. The Promissory Note is secured by a deed of trust, to which Defendant Zieve is the current trustee (the "Deed of Trust"). *Id*. ¶ 24. Prior note holders and assignees include Defendants ARLP, Altisource, and Resi, while Defendant Wilmington Trust previously acted as trustee on behalf of Defendant ARLP. *See id*. ¶¶ 66, 78, 80, 91.

### C.     Facts

In October 1998, Plaintiffs took out a mortgage loan to purchase their home located in Lake Forrest, California (the "Property"). *Id*. ¶¶ 18, 33. In October 2006, Mr. Ruegsegger "decided that he wanted to refinance the mortgage on the family home." *Id*. ¶ 34. A Promissory Note, in the amount of $630,000, was executed solely by Mr. Ruegsegger on October 13, 2006, which was secured by a Deed of Trust executed on the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                                    Date: April 30, 2018
                                                                                        Page 4

same day by both Plaintiffs. *Id*. ¶¶ 35—36. The Deed of Trust identifies non-party MortgageIT, Inc. as the lender, non-party LandAmerica Southland Title as trustee, and non-party Mortgage Electronic Recording Systems, Inc. ("MERS") as nominee for the lender, thus functioning as the beneficiary under the Deed of Trust. *See id*. Ex. B.

By September 2008, Plaintiffs decided to divorce, and on September 14, 2008, Mr. Ruegsegger conveyed his interest in the Property to Ms. Ruegsegger by recording a quitclaim deed in her favor. *Id*. ¶ 38; *see also id*. Ex. C. That same month, Ms. Ruegsegger contacted non-party CitiMortgage, Inc., who was now allegedly servicing the loan, to request a loan modification due to hardship caused by the divorce. *Id*. ¶¶ 37—38. Ms. Ruegsegger continued reaching out to CitiMortgage, Inc. for loan modification assistance and it appears that the last payment on the loan was made by Ms. Ruegsegger in April 2010. *Id*. ¶¶ 40—41, 46, 50.

Plaintiffs assert that a series of invalid assignments and transfers of the Promissory Note and Deed of Trust occurred after Mr. Ruegsegger conveyed his interested in the property. *See generally* FAC. First, on September 30, 2010 MERS allegedly executed an assignment of the Promissory Note and Deed of Trust, in favor of CitiMortgage, Inc. *Id*. ¶ 59. Then, on October 21, 2010, MERS executed another assignment of the Promissory Note and Deed of Trust, this time in favor of non-party MTGLQ Investors, L.P. ("MTGLQ"). *Id*. ¶ 65. Plaintiffs assert that this assignment was invalid because the Promissory Note and Deed of Trust had already been previously assigned. *Id*. Plaintiffs also allege that on November 12, 2010 MTGLQ recorded an assignment of the Deed of Trust, in favor of Defendant Resi. *Id*. ¶ 66. Again, Plaintiffs contend that this assignment was invalid because the Deed of Trust had already been assigned, and additionally because this assignment impermissibly bifurcated the Promissory Note and Deed of Trust. *Id*.

In October 2010, a notice of default and subsequent notice of trustee's sale was recorded in connection with the Property. *Id*. ¶ 64, 67. "With a trustee's sale pending, [Ms. Ruegsegger] filed suit [in Orange County Superior Court] on January 20, 2011 to prevent the loss of her home at a foreclosure sale [("State Action")]." *Id*. ¶ 72; *see also* Defendants' Request for Judicial Notice ("Def. RJN") (Dkt. 44) Ex. E. According to Plaintiffs, the State Action arose when CitiMortgage, Inc. "promis[ed] Ms. Ruegsegger a loan modification, induc[ed] her to become delinquent and in technical default on the loan . . . [and] set[] up the loan for foreclosure based on an alleged 'default' while she was in the middle of the agreed upon trial payment plan[.]" Dkt. 62 at 18—19. On June 22, 2015, the trial court entered judgment in favor of the State Action defendants, and on February 16, 2017 the California Court of Appeal affirmed the trial court's ruling. *See* Def. RJN Exs. B, C.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 17-0907-DOC (KESx)                    Date: April 30, 2018
                                                     Page 5

        Defendants now contend that Ms. Ruegsegger asserted in the State Action precisely what she asserts here, that alleged defects and irregularities in the assignments or transfers of the loan precludes Defendants from initiating nonjudicial foreclosure proceedings on the Property. Mot. to Strike at 9. However, Plaintiffs maintain that, both during and subsequent to the State Action, defective assignments and transfers of the Promissory Note and Deed of Trust continued to occur. *See generally* FAC. Plaintiffs also assert that they were not provided notice of the transfer of ownership of their loan, nor were they informed via a recorded assignment of the Promissory Note and Deed of Trust. *See id*. ¶¶ 74, 78, 80, 91, 93, 104, 138. For brevity, Plaintiffs assert in the FAC the following irregular and defective assignments:

- From unknown to non-party Invesco IV, sometime in April 2013 (FAC ¶ 74; *id*. Ex. L);

- From unknown to Defendant Altisource on October 23, 2014 (*Id*. ¶ 78);

- From Defendant Altisource to Defendant ARLP on November 24, 2014 (*Id*. ¶ 80);

- From Defendant Resi to Defendant Wilmington Trust as trustee for Defendant ARLP on June 19, 2015 (*Id*. ¶ 91; *id*. Ex. Z);

- From MTGLQ to Defendant Wilmington Trust as trustee for Defendant ARLP on June 25, 2015 (*Id*. ¶ 93; *id*. Ex. AA);

- From unknown to Defendant LSF9 on June 3, 2016 (*Id*. ¶ 104; *id*. Ex. HH); and

- From Defendant Wilmington Trust as trustee for Defendant ALRP to Defendant U.S. Bank as trustee for Defendant LSF9 on January 25, 2017 (*Id*. ¶ 138; *id*. Ex. EEE).

        Plaintiffs further assert that Defendants Caliber and Ocwen improperly serviced the loan during this period. *See generally* FAC. Specifically, Plaintiffs note that Defendant Ocwen began servicing the loan sometime in 2013 until May 19, 2016, when the current servicer, Defendant Caliber, took over. *Id*. ¶¶ 94, 100. Plaintiffs contend that Caliber and Ocwen sent monthly mortgage statements to Plaintiffs that misstated the amount and legal status of the debt owed. *Id*. ¶¶ 187, 201, 317, 319. Plaintiffs also allege that they received untimely, insufficient, or non-responses to multiple Qualified Written Requests ("QWR") that Plaintiffs sent to both Ocwen and Caliber regarding the validity

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                          Date: April 30, 2018
                                                                        Page 6

of the above referenced assignments and their ability to collect on the loan. *Id*. ¶¶ 82, 83, 86, 96, 105, 108, 110, 120, 132, 136.

Plaintiffs further assert that while Defendant Ocwen was servicing the loan it recorded a notice of default on behalf of Defendant Wilmington Trust as trustee for Defendant ARLP on August 27, 2015. *Id*. ¶ 95; *see also id*. Ex. BB. However, this particular notice of default was rescinded shortly thereafter on November 16, 2015. *Id*. ¶ 98; *see also id*. Ex. DD. The most recent notice of default was recorded by Defendant Caliber on February 9, 2017, on behalf of Defendant LSF9 (the "Notice of Default"). *Id*. ¶ 139; *see also id*. Ex. FFF. Again, however, this Notice of Default was rescinded on September 20, 2017, after the instant action was filed. *See* Def. RJN Ex. D.

### D.    Procedural History

On May 24, 2017, Plaintiffs filed their initial class action Complaint in this matter (Dkt. 1). On June 30, 2017, Plaintiffs filed a FAC, bringing eighteen claims:

(1) violation of the California Homeowner Bill of Rights ("HBOR"), under Cal. Civ. Code § 2920 *et seq.*, against Defendants Caliber, Ocwen, U.S. Bank, LSF9, and Zieve;
(2) violation of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), under Cal. Civ. Code § 1788 *et seq.*, against Defendants Caliber, U.S. Bank, and LSF9;
(3) violation of the RFDCPA, against Defendants Ocwen, Resi, Altisource, Wilmington Trust, and ARLP;
(4) violation of the Real Estate Settlement Practices Act ("RESPA"), under 12 U.S.C. § 2605, against Defendant Ocwen;
(5) violation of RESPA, against Defendant Caliber;
(6) violation of the Truth In Lending Act ("TILA"), under 15 U.S.C. § 1641, against Defendants Resi, Altisource, ARLP, and LSF9;
(7) breach of contract, against Defendants Caliber, Ocwen, and LSF9;
(8) violation of California's Unfair Competition Law ("UCL"), under Cal. Bus. & Prof. Code § 17200 *et seq.*, against Defendants Caliber, U.S. Bank, and LSF9;
(9) violation of the UCL, against Defendants Ocwen, Wilmington Trust, and ARLP;
(10) violation of the HBOR, against Defendants Caliber, U.S. Bank, LSF9, and Zieve;
(11) violation of the RFDCPA against Defendants Ocwen, Resi, Altisource, Wilmington Trust, and ARLP;
(12) slander of title, against Defendants Ocwen, Wilmington Trust, and ARLP;

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                    Date: April 30, 2018
                                                    Page 7

(13) slander of title, against Defendants Caliber, U.S. Bank, LSF9, and Zieve;
(14) negligence, against Defendants Caliber, U.S. Bank, LSF9, and Zieve;
(15) quiet title, against all Defendants and all persons unknown;
(16) set aside and rescind the Notice of Default and Notice of Trustee's Sale,
against Defendants Caliber, U.S. Bank, LSF9, and Zieve;
(17) fraudulent concealment, against Defendant Ocwen; and
(18) declaratory relief, against Defendants Caliber, U.S. Bank, and LSF9.

*See generally* FAC at 51—105. Based on the above claims, Plaintiffs request the
following relief: (1) compensatory damages; (2) exemplary damages; (3) a judicial
declaration stating that Defendants do not have the legal right to foreclose on the
Property; (4) an order setting aside the Notice of Default recorded against the Property;
(5) an order quieting title in favor of Ms. Ruegsegger; (6) an injunction restraining any
material violations of the HBOR by Defendants, including proceeding with any
foreclosure sale; (7) civil penalties; (8) costs of suit; (9) attorney's fees; and (10) such
other relief as the Court deems proper. *See id.* at 108—109.

Plaintiffs also seek to represent three classes consisting of:

(1)  All California residents whose loans were serviced by Caliber and whose
home was either foreclosed upon or are presently awaiting foreclosure ("Caliber
Class").

(2)  All California residents whose loans were serviced by Ocwen and whose
home was either foreclosed upon or are presently awaiting foreclosure ("Ocwen
Class").

(3)  All California residents whose loans were acquired by Caliber from Ocwen
and whose home was either foreclosed upon or are presently awaiting foreclosure
("Sub-Class").

*Id.* ¶¶ 149—150. Class claims assert violations of the HBOR, RFDCPA, RESPA, TILA,
UCL, and breach of contract. *See* FAC at 1—2.

Defendants filed the instant Motion to Dismiss, Motion to Strike, and respective
supplemental motions on October 2, 2017. *See* Dkt. Nos. 38, 39, 40, 41, 43, 45, 46.
Defendants move pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2),
12(b)(6), and 12(f). *See id.* Plaintiffs opposed these motions on November 6, 2017. *See*
Dkt. Nos. 55, 57, 58, 59, 60, 61, 62. Defendants replied on December 4, 2017. *See* Dkt.
Nos. 66, 67, 68, 69, 70, 72, 73.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                                            Date: April 30, 2018
                                                                             Page 8

## II.    Legal Standards

### A.    Motion to Dismiss

#### 1.    Rule 12(b)(1)

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(1) when a court lacks subject matter jurisdiction due to a plaintiff's lack of Article III standing. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *see also Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (noting that Article III standing bears on the court's subject matter jurisdiction, and is therefore subject to challenge under Federal Rule of Civil Procedure 12(b)(1)).

The "irreducible constitutional minimum" of Article III standing contains three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Id.*; *see also Spokeo v. Robins*, 136 S. Ct. 1540, 1548–49 (2016). Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Lujan*, 504 U.S. at 560. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id*. Ultimately, the plaintiff, as the party invoking federal jurisdiction, has the burden of establishing these elements. *See id*. at 561.

Under Rule 12(b)(1), a defendant may also move to dismiss a case for a lack of subject matter jurisdiction when it is not clear that the proper jurisdictional requirements have been met. *See* Fed. R. Civ. P. 12(b)(1). Federal district courts generally have subject matter jurisdiction over civil cases through diversity jurisdiction, 28 U.S.C. § 1332, or federal question jurisdiction, 28 U.S.C. § 1331. *See Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064, 1068 (9th Cir. 2005).

#### 2.    Rule 12(b)(2)

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss for lack of personal jurisdiction. "The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154–55 (9th Cir. 2006) (citing *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996)). Because California's long-arm statute is coextensive

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                                    Date: April 30, 2018
                                                                     Page 9

with federal due process requirements, the personal jurisdiction analysis under state and federal law are the same. *See* Cal. Civ. Proc. Code § 410.10; *see also Roth v. Garvia Marquez*, 942 F.2d 617, 620 (9th Cir. 1991). For a court to exercise personal jurisdiction over a nonresident defendant, the defendant must have "minimum contacts" with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

In deciding personal jurisdiction, courts may consider evidence presented in affidavits and declarations. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). Plaintiffs bear the burden of showing that courts have personal jurisdiction over defendants. *See Pebble Beach*, 453 F.3d at 1154. Absent formal discovery or an evidentiary hearing, "this demonstration requires that the plaintiff make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id*. (quotations omitted). To make this prima facie showing, a plaintiff can rely on the allegations in its complaint to the extent that the moving party does not controvert those allegations. *See Doe*, 248 F.3d at 922.

### 3.      Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, a court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Under the incorporation by reference doctrine, the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                           Date: April 30, 2018
                                                                        Page 10

1121 (9th Cir. 2002). The court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### 4.      Rule 9(b)

An allegation of "fraud or mistake must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("[Rule 9(b) requires] the times, dates, places, benefits received, and other details of the alleged fraudulent activity."). In addition, the allegation "must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106 (quoting *In re Glenfed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)). Rule 9(b)'s heightened pleading standard applies not only to federal claims, but also to state law claims brought in federal court. *Id.* at 1103. This heightened pleading standard ensures that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

However, "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also Neubronner*, 6 F.3d at 672 (explaining that Rule 9(b)'s heightened pleading standard may be relaxed when the allegations of fraud relate to matters particularly within the opposing party's knowledge, such that a plaintiff cannot be expected to have personal knowledge).

### 5.      Leave to Amend

When a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g.*, *DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility. *See, e.g.*, *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                                    Date: April 30, 2018
                                                                              Page 11

### B.    Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are disfavored and "will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 990 (C.D. Cal. 2008) (internal quotation marks and citation omitted); *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 566 (C.D. Cal. 2005) ("Motions to strike are generally disfavored because of the limited importance of pleadings in federal practice and because it is usually used as a delaying tactic."). The Ninth Circuit has defined "immaterial" matter as "that which has no essential or important relationship to the claim for relief or the defenses being pleaded" and "impertinent matter" as "statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (internal quotation marks and citation omitted), *overruled on other grounds*, 510 U.S. 517 (1994).

Motions to strike class allegations are generally disfavored, particularly where the arguments against the class claims would benefit from discovery or would otherwise be more appropriate in a motion for class certification. *Holt v. Globalinx Pet, LLC*, No. SACV13–0041 DOC JPRX, 2013 WL 3947169, at *3 (C.D. Cal. July 30, 2013); *Thorpe v. Abbott Labs., Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008). In fact, class allegations in a complaint are typically tested on a motion for class certification, not at the pleading stage. *Collins v. Gamestop Corp.*, 2010 WL 3077671, at *2 (N.D. Cal. Aug. 6, 2010). However, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Thus, courts in this Circuit have struck class allegations where it is clear from the pleadings that a class could not be certified. *See, e.g., Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009).

### C.    Request for Judicial Notice

Defendants ask the Court to take judicial notice of six documents in support of their joint Motion to Dismiss. *See generally* Def. RJN. Defendant Zieve asks the Court to take judicial notice of twenty-one documents is support of its supplemental Motion to Dismiss. *See* Zieve Request for Judicial Notice ("Zieve RJN") (Dkt. 47). Plaintiffs also ask the Court to take judicial notice of four documents in support of their opposition to Defendants' Motion to Strike. *See* Plaintiffs Request for Judicial Notice ("Pl. RJN") (Dkt. 56). In sum, the Parties ask for judicial notice of various public records (*e.g.*, deed of

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                    Date: April 30, 2018
                                                    Page 12

trust, corporate assignment of deed of trust, substitution of trustee, notice of default, notice of trustee's sale, notice of rescission) and court records (*e.g.*, register of actions, complaints, moving papers, minute orders, notice of entry of judgment, court orders, and consent orders).

A court may take judicial notice of certain items without converting the motion to dismiss into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). As stated earlier, courts may "properly consider exhibits attached to the complaint and documents whose contents are alleged in the complaint but not attached, if their authenticity is not questioned." *Okla. Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1348 (C.D. Cal. 2014) (citing *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001)). Under Federal Rule of Evidence 201, a court may also take judicial notice of matters of public record. *Harris v. Cnty. Of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that the court may take judicial notice of "undisputed matters of public record," including "documents on file in federal or state courts"); *Wise v. Wells Fargo Bank, N.A.*, 850 F. Supp. 2d 1047, 1056—57 (C.D. Cal. 2010) (taking judicial notice of deed of trust, and notice of default and election to sell under deed of trust when "[e]ach of these documents was recorded in the Official Records of the Los Angeles County Recorder's Office"); *Valzaquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1057—58 (C.D. Cal. 2008) (taking judicial notice of documents recorded with the Los Angeles County Recorder's Office, including deeds of trust). In addition, judicial notice is appropriate for information obtained from government websites, *see Paralyzed Victims of Am. v. McPherson*, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 8, 2008), as well as copies of official acts or records of departments of the United States. *See Hite v. Wachovia Mortg.*, 2010 WL 10065632, at *6 (E.D. Cal. June 10, 2010) (collecting cases). The Court does not, however, take judicial notice of reasonably disputed facts contained within the judicially-noticed documents. *See Lee*, 250 F.3d at 689-90.

Therefore, the Court takes judicial notice of the following:

- Notice of Rescission recorded in the Official Records of Orange County on September 20, 2017, No. 2017000399593 (Def. RJN Ex. D);

- Assignment of Deed of Trust recorded in the Official Records of Orange County on October 5, 2010, No. 2010000500298 (Zieve RJN Ex. 102);

- Notice of Default recorded in the Official Records of Orange County on October 5, 2010, No. 2010000500300 (Zieve RJN Ex. 104);

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 17-0907-DOC (KESx)                                    Date: April 30, 2018
                                                                             Page 13

- Substitution of Trustee recorded in the Official Records of Orange County on August 27, 2015, No. 2015000445605 (Zieve RJN Ex. 109);

- Complaint, *Ruegsegger v. CitiMortgage, Inc., et al.*, No. 30-2011-00442197 (Super. Ct. Orange County) (Jan. 20, 2011) (Def. RJN Ex. E);

- Third Amended Complaint, *Ruegsegger v. CitiMortgage, Inc., et al.*, No. 30-2011-00442197 (Super. Ct. Orange County) (Jan. 24, 2012) (Def. RJN Ex. A);

- Fourth Amended Complaint, *Ruegsegger v. CitiMortgage, Inc., et al.*, No. 30-2011-00442197 (Super. Ct. Orange County) (Nov. 3, 2014) (Def. RJN Ex. F);

- Minute Order, *Ruegsegger v. CitiMortgage, Inc., et al.*, No. 30-2011-00442197 (Super. Ct. Orange County) (Feb. 13, 2015) (Zieve RJN Ex. 119);

- Notice of Entry of Judgment, *Ruegsegger v. CitiMortgage, Inc., et al.*, No. 30-2011-00442197 (Super. Ct. Orange County) (April 28, 2015) (Zieve RJN Ex. 120);

- Notice of Entry of Judgment, *Ruegsegger v. CitiMortgage, Inc., et al.*, No. 30-2011-00442197 (Super. Ct. Orange County) (June 22, 2015) (Def. RJN Ex. B);

- California Court of Appeal Opinion, *Ruegsegger v. CitiMortgage, Inc., et al.*, No. G052454 (Cal. App. Ct., Fourth Division) (Feb. 16, 2017) (Def. RJN Ex. C);

- Register of Actions, *Ruegsegger v. CitiMortgage, Inc., et al.*, No. 30-2011-00442197 (Super. Ct. Orange County) (Zieve RJN Ex. 115).

The Court takes judicial notice of the above described documents that have been recorded with the Orange County recorder, as well as the existence of state court judicial proceedings in *Ruegsegger v. CitiMortgage, Inc., et al*. Defendant Zieve's RJN exhibits 101, 103, 105, 106, 107, 108, 110, 111, 112, and 113 are all duplicate copies of exhibits already appended to Plaintiffs' FAC, and are thus judicially noticeable under the incorporation by reference doctrine. *See* FAC Exs. B, E, I, J, K, AA, BB, DD, FFF, and LLL; *see also Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). The Court declines to take judicial notice of Plaintiffs' four documents (Pl. RJN Exs. A—D),

which include three consent orders and one trial court document. While the Court may take judicial notice of the existence of these documents, the Court finds here that Plaintiffs improperly seek judicial notice of the truth of the disputed facts therein. Specifically, to demonstrate common evidence in support of their class claims. *See* Dkt. 55 at 2—3. Accordingly, the Court denies Plaintiffs' request for judicial notice. *See Riedel v. JP Morgan Chase Bank, N.A.*, 2014 WL 12561576, at *2 (C.D. Cal. June 23, 2014) (taking judicial notice of consent order, but "not accept[ing] as truth the facts or contents of the documents).

## III.   Discussion

Since some of the arguments raised jointly by Defendants overlap with arguments raised individually by some Defendants, the Court will address the arguments grouped as appropriate. *Compare* Mot. to Dismiss *with* Ocwen Motion, Resi Motion, Zieve Motion, Caliber Memo, and Trust Memo. Further, some of the arguments raised by Defendants pertain to Plaintiffs' claims against particular Defendants themselves, and others pertain to the claims generally. Thus, the Court will address the arguments in this manner.

### A.   Issues Pertaining to Individual Parties

#### 1.   Jurisdictional Statement

Defendant Zieve argues that that this case should be dismissed in its entirety for lack of subject matter jurisdiction, particularly because Plaintiffs and Defendant Zieve are not diverse parties. *See* Zieve Motion at 5—7; *see also* FAC ¶ 24 (stating that Defendant Zieve has its principal place of business in California). Notably though, Defendant Zieve does not argue that the FAC fails to present a federal question, nor does Defendant Zieve make any argument substantively challenging this Court's jurisdiction under 27 U.S.C. § 1331.

As stated in this Court's previous Order,[1] each action filed in federal court must contain "a short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8. This Court's Local Rules also state that "[t]he statutory or other basis for the exercise of jurisdiction by this Court shall be plainly stated in the first paragraph of any document invoking this Court's jurisdiction." L.R. 8-1.

---

[1] On June 26, 2017, the Court entered an order to show cause why the Court should not dismiss this action for lack of subject matter jurisdiction. *See* Dkt. 15. The Court advised Plaintiffs that their Complaint failed to allege complete diversity between the parties. *Id.* at 3. Specifically, Plaintiffs failed to allege facts about the citizenship of the individual Defendants. *Id.* Subsequent to the Court's Order, Plaintiffs filed their FAC, in which they added three federal law causes of action and asserted additional facts regarding citizenship. *Compare* Dkt. 1 *with* FAC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 17-0907-DOC (KESx)                                    Date: April 30, 2018
                                                                    Page 15

        The FAC's first paragraph states that Plaintiffs' claims "seek to redress
Defendants' knowing and serial failures to adhere to the express requirements of
California and Federal law." FAC ¶ 1. In fact, Plaintiffs bring forth three federal
law causes of action and fifteen state law causes of action. *See generally id*. However, rather
confusingly, Plaintiffs assert in their FAC that the Court's jurisdiction "is based on 28
U.S.C. § 1332 as there is complete diversity between the parties[.]" *Id*. ¶ 30; *but see id*. ¶
24 (showing that the parties are non-diverse). Thus, Plaintiffs then assert in their
opposition that the "instant matter is a federal question case[.]" Dkt. 61 at 3.

        Defendant Zieve argues that the Court should hold Plaintiffs strictly to their word,
and only consider the jurisdictional statement as currently pleaded.[2] *See* Zieve Motion at
6—7. However, it appears to the Court that Plaintiffs simply made a negligent mistake
when revising their FAC, and they acknowledge this in their opposition by noting that
when they amended their Complaint they did so purposefully to "add[] federal causes of
action and Class allegations." Dkt. 61 at 3. Moreover, the Court finds Defendant Zieve's
approach overly technical and it fails to consider Federal Rule of Civil Procedure 8(e),
which requires the pleadings to be construed so as to do substantial justice. *See* Fed. R.
Civ. P. 8(e). Further, the Court notes that in determining the existence of subject matter
jurisdiction, a federal court is "not limited to the jurisdictional statutes identified in the
complaint." *Gerritsen v. de la Madrid Hurtado*, 819 F. 2d 1511, 1515 (9th Cir. 1987)
(courts may examine the entire complaint to ascertain whether it reveals any proper basis
for assuming jurisdiction). "If facts giving the court jurisdiction are set forth in the
complaint, the provision conferring jurisdiction need not be specifically pleaded."
*Williams v. United States*, 405 F.2d 951, 954 (9th Cir. 1969); *see also* 5 Wright & Miller,
*Federal Practice and Procedure*, § 1206 (3d ed. April 2017 update) (hereinafter "*Wright
& Miller*") ("[T]he district court may sustain jurisdiction when an examination of the
entire complaint reveals a basis for assuming subject matter jurisdiction other than one
that has been improperly asserted by the pleader."). Thus, the Court looks beyond the
statute pleaded by Plaintiffs by considering the FAC holistically to determine the Court's
basis for jurisdiction.

        An action "arises under" federal law pursuant to § 1331 if the cause of action is
created by federal law or necessarily requires resolution of a substantial question of
federal law. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308,

---

[2] Defendant Zieve also argues that under the "time-of-filing rule," this Court must determine whether subject matter
jurisdiction existed when the original complaint was filed. *See* Zieve Motion at 6. However, the Court notes that
both the original Complaint and FAC allege violations of federal statutes, thus the analysis does not change here.
*Compare* Dkt. 1 (citing TILA (¶¶ 49, 50, 52, 58, 60, 62, 63, 64, 75, 77, 116, 122, 131) and RESPA (¶¶ 55, 58, 66,
67, 70, 72—73, 80, 91, 94, 98, 100—101, 103—104, 106, 110—111, 119, 121, 130—131, 229, 231, 235)) *with*
FAC at 64—66.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                                     Date: April 30, 2018
                                                                        Page 16

314 (2005). To determine whether a cause of action is created by federal law, courts typically apply the "well-pleaded complaint" rule, as noted above. *See Rainero v. Archon Corporation*, 844 F.3d 832, 836–37 (9th Cir. 2016). The "well-pleaded complaint" rule establishes that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Id*. Further, even if the complaint fails to allege facts sufficient to establish subject matter jurisdiction according to federal question jurisdiction over all claims, the court may still have jurisdiction over certain state law claims according to supplemental jurisdiction. *See* 28 U.S.C. § 1367. Accordingly, federal courts may exercise supplemental jurisdiction over state law claims linked to a claim based on federal law. *Id*.

Here, a review of both the original Complaint and the FAC reveals that a federal question actually is involved and is relied upon by Plaintiffs. Specifically, the Plaintiffs cite to the Real Estate Settlement Practices Act and the Truth in Lending Act—both of which are federal statutes. *See generally* Dkt. 1 and FAC. The Court cannot doubt that it was the Plaintiffs' purpose to make violation of these federal laws the basis of their suit. *See also Wright & Miller* § 1209. Moreover, supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, is appropriate here because their state law claims share a "common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966); *see also Wright & Miller*, § 3567 ("Supplemental jurisdiction can be justified only if the supplemental claim is so closely related to the jurisdiction—invoking claim that they are part of the same 'case' or 'controversy.'").

Thus, the Court concludes that the allegations in the FAC are sufficient to invoke federal question jurisdiction. However, the Court also grants Plaintiffs leave to amend their jurisdictional statement.

## 2.      Liability of Wilmington Trust, LSF9, and ARLP

Defendants Wilmington Trust, LSF9, and ARLP argue that they cannot be held liable for any claims asserted against them in their individual capacities. *See* Mot. to Dismiss at 23—24. Further, these trust entities contend that they cannot be named as a defendant because a trust is not a legal entity under California law. *Id*. For this reason, they seek dismissal of all claims asserted against them.

Generally, for parties other than individuals and corporations, "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Fed. R. Civ. P. 17(b). In California, a trust is not a legal entity and has no capacity to sue or be sued. *See Galdjie v. Darwish*, 113 Cal. App. 4th 1331, 1343–45 (Cal. Ct. App. Dec. 4, 2003); *see also Portico Mgmt. Grp., LLC v. Harrison*, 202 Cal. App. 4th 464, 473 (Cal.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                                    Date: April 30, 2018
                                                                              Page 17

Ct. App. Dec. 28, 2011) ("As a general rule, the trustee is the real party in interest with standing to sue and defend on the trust's behalf.") (citation omitted). Further, "[a] claim based on a contract entered into by a trustee in the trustee's representative capacity, . . . may be asserted against the trust by proceeding against the trustee in the trustee's representative capacity . . ." Cal. Prob. Code §18004.

Plaintiffs do not dispute that they cannot sue the Defendant trust entities in their individual capacities. *See* Dkt. 62 at 35. In fact, Plaintiffs move in their response brief, pursuant to Federal Rule of Civil Procedure 41, to dismiss their claims against Defendants LSF9 and ARLP. *Id*. However, as to Defendant Wilmington Trust, Plaintiffs contend that they will "continue to assert claims against Wilmington Trust to the extent that it acted as trustee for the ARLP 2014-2 Securitized Trust." *Id*; *see also* FAC ¶¶ 6, 75, 77, 79, 116, 122 (appropriately referencing Wilmington Trust in its representative capacity).

Accordingly, the Court DISMISSES WITHOUT PREJUDICE Defendants LSF9 and ARLP from this action. Plaintiffs are given leave to amend their complaint in order to substitute Wilmington Trust N.A. individually with Wilmington Trust, N.A. as Trustee for the ARLP 2014-2 Securitized Trust in the case caption.

### 3. Personal Jurisdiction as to Wilmington Trust and Altisource

Defendants Altisource and Wilmington Trust move to dismiss Plaintiffs' claims against them for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). *See* Trust Memo at 1.[3] At issue here is whether Altisource and Wilmington Trust, both out of state Defendants, purposefully directed their activities at California, and therefore whether specific jurisdiction lies.[4]

"In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum state.' When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the state." *Bristol-Myers Squibb Co. v. Superior Court of California, San*

---

[3] Defendant ARLP joined in this memorandum. *See* Trust Memo at 1. However, the Court need not address ARLP's respective arguments because, as discussed *supra*, ARLP has been dismissed pursuant to Federal Rule of Civil Procedure 41. Also, based on the foregoing analysis, the Court addresses in this section the exercise of personal jurisdiction over Wilmington Trust, N.A., specifically in its capacity as Trustee for the ARLP 2014-2 Securitized Trust.

[4] Plaintiffs do not dispute that Defendants Altisource and Wilmington Trust are not subject to general jurisdiction in California. *See* Dkt. 58 at 2 ("The basis for this Court's jurisdiction does not lie in the concept of general jurisdiction over Defendants, but rather in notions of specific jurisdiction[.]").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 17-0907-DOC (KESx)                                   Date: April 30, 2018
                                                                   Page 18

*Francisco County*, 137 S. Ct. 1773, 1781 (2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). In determining whether to exercise specific jurisdiction, the Ninth Circuit applies a three-prong test:

> (1) the defendant either purposefully direct[s] its activities or purposefully avails itself of the benefits afforded by the forum's laws; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, *i.e.*, it [is] reasonable.

*Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (internal quotation marks and citation omitted). The plaintiff "bears the burden of satisfying the first two prongs[,]" and if the plaintiff does so, "the burden then shifts to [the defendant] to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476—78 (1985)).

The exact form of the court's jurisdictional inquiry "depends on the nature of the claim at issue." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). "For claims sounding in contract, [the court] generally appl[ies] a 'purposeful availment' analysis and ask[s] whether a defendant has 'purposefully avail[ed] [himself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). "For claims sounding in tort, [the court] instead appl[ies] a 'purposeful direction' test and look[s] to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere." *Id.*

Here, Plaintiffs maintain that Altisource and Wilmington Trust are subject to specific jurisdiction in California based on their possession and "legally void transfers of [the] Deed of Trust for the California property at issue in this case." Dkt. 58 at 1. Therefore, the "purposeful availment" test applies to the present case. *See Pilcher v. Direct Equity Lending*, 189 F. Supp. 2d 1198, 1209 (D. Kansas 2002) (applying the purposeful availment test when examining whether it could exercise personal jurisdiction over a nonresident defendant trust who had purchased mortgage notes secured by real property in the forum); *see also Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (applying the purposeful availment test where although some of the plaintiff's claims sounded in tort, they all arose out of plaintiff's contractual relationship with the defendants).

Under this test, a "defendant has purposely availed himself of the benefits of a forum if he has deliberately 'engaged in significant activities within a state or has created

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 17-0907-DOC (KESx)                                   Date: April 30, 2018
                                                                            Page 19

continuing obligations between himself and the residents of the forum.'" *Gray & Co. v. Firstenberg Machinery Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (quoting *Burger King*, 471 U.S. at 475—76). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475.

Defendants contend that "merely purchasing consolidated loan pools that happen to include" Plaintiffs' Deed of Trust, which also happens to be secured by real property in the forum, "shows no deliberateness on the part of Defendants directed at California in particular." Trust Memo at 8 (citing *Williams v. Firstplus Home Loan Owner Trust 1998-2*, 310 F. Supp. 2d 981, 995 (W.D. Tenn. 2004)). In response, Plaintiffs argue that possession of the Deed of Trust does support a finding of personal jurisdiction, and they point out that it cannot "be overlooked that Defendants most certainly seek to avail themselves of the benefits of California's non-judicial foreclosure statutes[.]" Dkt. 58 at 4.

Plaintiffs cite to *Easter v. American West Financial*, 381 F.3d 948, 961(9th Cir. 2004) to support their argument. *See* Dkt. 58 at 3. In *Easter*, loans secured by property in the state of Washington were made by the defendants, which were later claimed to be usurious. *Easter*, 301 F.3d at 961. The Ninth Circuit found that the defendants availed themselves of the protections afforded by Washington's state laws as beneficiaries of related deeds of trust conveying a property interest in Washington realty. *Id*. The court opined that "holding a deed of trust represents a significant contact with the forum." *Id*. However, the court also noted that the defendants received money from state residents, even though routed through loan servicing companies, consisting of income derived from loans negotiated and executed in Washington state and made to Washington residents. *Id*. Significantly, the court stated in a footnote:

> Because the [t]rust [d]efendants receive an income stream from Washington residents, we also have no occasion to rule on whether the deeds of trust alone would support personal jurisdiction. We simply note that they are a significant contact with the state and that, combined with the income derived from Washington residents, they show that the [t]rust [d]efendants have purposefully availed themselves of the privilege of doing business in Washington, as to the secured credit transactions here related.

*Id*. at 961 n.7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 17-0907-DOC (KESx)                                    Date: April 30, 2018
                                                                    Page 20

     Defendants argue that the holding in "Easter provides Plaintiffs no help[,]" because notably here the FAC "does not allege that either [D]efendant ever received payments from Plaintiffs on the loan[.]" Dkt. 70 at 4—5. However, the Court recognizes that receiving an income stream or benefiting financially by possessing the securitized interest in the property is only one form of affirmative conduct that the Court may consider in its jurisdictional analysis. Here, Plaintiffs allege in their FAC that Defendant "Ocwen, on behalf of Wilmington Trust as Trustee for ARLP, recorded a new Notice of Default and Election to Sell Under Deed of Trust on the property." FAC ¶ 95; *see also id.* Ex. BB. In the Court's view, Defendant Wilmington Trust's initiation of foreclosure proceedings, coupled with its possession of the deed of trust (which was secured by real property here in California—a significant contact), constitutes purposeful availment and is in accord with *Easter*. The Court also finds that Plaintiffs' claims against Wilmington Trust arise out its forum-related activities (here, the alleged initiation of wrongful foreclosure proceedings), and because Wilmington Trust has purposefully directed its activities to California, personal jurisdiction is presumptively reasonable. *See T.M. Hylwa, M.D., Inc. v. Palka*, 823 F.2d 310, 315 (9th Cir. 1987). Accordingly, the Court holds that there is jurisdiction over Defendant Wilmington Trust.

     However, the same cannot be said as to Defendant Altisource. In their memorandum, Defendants argue that the FAC lacks sufficient allegations to establish specific jurisdiction over Altisource because "Plaintiffs fail to show that Altisource held Plaintiffs' loan." Dkt. 70 at 1. Defendants correctly point out that the "only allegation in the [FAC] that ties Altisource to California is that non-party Altisource Residential, LP [(a wholly owned subsidiary of Altisource)] purportedly purchased Plaintiffs' loan from Invesco[.]" Trust Memo at 6 (citing FAC ¶¶ 78, 27). In response, Plaintiffs contend that [a]lthough no discovery has been taken, there is already a strong indication that Altisource may have had an interest in the loan at a relevant point in time." Dkt. 58 at 6.

     To support their position, Plaintiffs point the Court to Altisource's October 22, 2013 Form 10-Q, which was filed with the Securities and Exchange Commission ("10-Q Form"). *See* Dkt. 54-1 at 16 (incorporated by reference in the FAC). The 10-Q Form states in relevant part that "[o]n March 21, 2013, [Altisource] acquired a portfolio of residential mortgage loans, substantially all of which were non-performing, consisting of an aggregate of 230 mortgage loans . . . The portfolio was purchased from six separate trusts managed by Invesco Advisors, Inc. and the mortgage loans were originated by an entity unrelated to the sellers." *Id*. Plaintiffs aver that "the timing of the transfer . . . lines up with a purported change of ownership of the loan in or around April 2013[.]" Dkt. 58 at 6. However, the FAC also alleges that in April 2013 they were informed by Ocwen that the owner of the loan was Invesco. *See* FAC ¶ 74. The FAC further alleges that "the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                                      Date: April 30, 2018
                                                                       Page 21

partial payment history by Caliber reflects there was another change of investor on the
loan, this one on October 23, 2014 . . . [o]n Plaintiffs' information and belief, the loan
was sold on or around this date to Altisource, LP." FAC ¶ 78 (referencing FAC Ex. M
and the 10-Q Form).

      First, the Court cannot reasonably infer from Altisource's 10-Q Form that
Plaintiffs' loan was among one of the 230 mortgages that were acquired on March 21,
2013 from Invesco Advisors, Inc. simply because Plaintiffs allege that the timing of the
transfer lines up. *See Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009)
("[F]or a complaint to survive a motion to dismiss, the non-conclusory factual content,
and reasonable inferences from that content, must be plausibly suggestive of a claim
entitling the plaintiff to relief."). Second, the Court is bewildered by Plaintiffs' "lining
up" of the dates of the purported transfers. It cannot be that in March 2013 Invesco
transferred the loan to Altisource (*see* Dkt. 54-1 at 16), yet in April 2013 Invesco was still
the owner of the loan (*see* FAC ¶ 74; *see also id*. Ex. L), and then in October 2014 an
unknown entity transferred the loan to Altisource, L.P. (*see* FAC ¶ 78). Moreover, the
alleged partial payment history from Caliber that Plaintiffs rely on to connect the dots
does not clearly identify when and to whom the transfers were made. *See* FAC Ex. M at
3—4. Thus, the Court finds that Plaintiffs have failed to assert facts in their FAC that
allows the Court to infer that Defendant Altisource "possessed the loan at some relevant
point in time." Dkt. 58 at 6. And, because the "alleged ownership of the loan for this
California property [is what Plaintiffs contend] confers jurisdiction," the Court concludes
that Defendant Altisource is not subject to this Court's specific jurisdiction. Dkt. 58 at 6.

      Accordingly, Defendant Altisource is DISMISSED WITHOUT PREJUDICE for
lack of personal jurisdiction.

### 4.    Article III Standing

      Defendants assert that Plaintiffs lack standing. *See generally* Mot. to Dismiss.
Specifically, Defendants contend that Mr. Ruegsegger lacks standing to bring forth any of
his claims. *See id*. at 9. Whereas, Ms. Ruegsegger lacks standing to assert violations of
the HBOR and TILA. *See id*. at 16, 21. The Court will address standing as to both
Plaintiffs individually.

#### a.    Mr. Ruegsegger

      Defendants argue that Mr. Ruegsegger lacks standing because he has no interest in
the Property due to the alleged fact that "he quitclaimed his interest in the Property to Ms.
Ruegsegger in 2008[.]" *Id*. at 9. As a result, Defendants maintain that "he cannot claim

Case No. SA CV 17-0907-DOC (KESx)                                      Date: April 30, 2018
                                                                              Page 22

any harm from nonjudicial foreclosure proceedings on the property, nor any related actions taken by Defendants to enforce a security interest in the property." *Id*. at 10. In response, Plaintiffs contend that Mr. Ruegsegger's "obligations under the Promissory Note and the [Deed of Trust] as a borrower were in no way discharged when he quitclaimed his interest in the Property[.]" Dkt. 62 at 7.

As to "harm from nonjudicial foreclosure proceedings[,]" the general rule is that "only parties with an interest in the secured loan or in the real property security itself have standing to challenge or attempt to set aside a nonjudicial foreclosure sale . . .." *Banc of America Leasing & Capital, LLC v. 3 Arch Trustee Servs.*, 180 Cal. App. 4th 1090, 1103 (Cal. Ct. App. Dec. 11, 2009); *Royal Thrift and Loan Co. v. County Escrow, Inc.*, 123 Cal. App. 4th 24, 33 (Cal. Ct. App. Oct. 15, 2004).

As to harm related to "actions taken by Defendants to enforce a security interest in the Property[,]" a person who is not a party to a contract does not have standing either to seek its enforcement or to bring tort claims based on the contractual relationship. *Mega Life & Health Insurance Co. v. Superior Court*, 172 Cal. App. 4th 1522, 1528–32 (Cal. Ct. App. April 14, 2009); *see also Hatchwell v. Blue Shield of California*, 198 Cal. App. 3d 1027, 1034 (Cal. Ct. App. Jan. 28, 1988) ("Someone who is not a party to the contract has no standing to enforce the contract or to recover extra contract damages for wrongful withholding of benefits to the contracting party."). Many district courts in the Ninth Circuit have held that a plaintiff who is not a party to a mortgage loan cannot assert TILA, RESPA, UCL, or fraud based claims. *See Thomas v. Guild Mortgage Co.*, 2011 WL 676902, at *4 (D. Ariz. Feb. 23, 2011) (collecting cases); *Ambers v. Wells Fargo Bank, N.A.*, 2014 WL 883752, at *5 (N.D. Cal. Mar. 3, 2014) (plaintiff did not sign the deed of trust or assert any other basis for standing); *Bianchi v. Bank of America, N.A.*, 2012 WL 11946982 (S.D. Cal. May 17, 2012) ("According to the Deed of Trust executed on July 16, 2003, the borrower to the loan and the sole signatory on the mortgage contract is 'Lewis S. Bianchi, a single man.'"); *but see Singh v. Wells Fargo Bank, N.A.*, 2011 WL 2118889, at *1 (E.D. Cal. May 27, 2011) (dismissing RESPA claim where the plaintiff had signed the deed of trust, but not the promissory note); *Wilson v. JP Morgan Chase Bank, N.A.*, 2010 WL 2574032, at *1 (E.D. Cal. June 25, 2010) (same).

The FAC alleges that the Deed of Trust was executed by both Mr. Ruegsegger and Ms. Ruegsegger. FAC ¶ 36. A review of the Deed of Trust reveals that both Plaintiffs are designated as "Borrowers" under the Deed of Trust. *See id*. Ex. B at 2. Moreover, the Deed of Trust provides that:

> [A]ny Successor in Interest of Borrower who assumes Borrower's obligations under this Security Interest in writing,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                           Date: April 30, 2018
                                                                      Page 23

> and is approved by Lender, shall obtain all of Borrower's rights
> and benefits under this Security Instrument. Borrower shall not
> be released from Borrower's obligations and liability under
> this Security Instrument unless Lender agrees to such release
> in writing.

*Id*. at 11.

Further, the Promissory Note, which Mr. Ruegsegger executed alone (*see* FAC ¶ 35; *see id*. Ex. A at 5), states in relevant part:

> If all or any part of the Property or any Interest in the Property
> is sold or transferred without Lender's prior written consent,
> Lender may require immediate payment in full of all sums
> secured by this Security Instrument . . . Borrower will continue
> to be obligated under the Note and this Security Instrument
> unless Lender release Borrower in writing.

FAC Ex. A at 5.

Here, the FAC does not allege, nor do Defendants contend in their moving papers, that the "Lender" has agreed, in writing, to release Mr. Ruegsegger from his obligations under the Promissory Note or the Deed of Trust. Thus, the Court finds immaterial Mr. Ruegsegger's conveyance of his ownership interest to Ms. Ruegsegger, because he clearly retains an interest in the underlying mortgage loan. Accordingly, the Court finds that because Mr. Ruegsegger retains an interest in the secured loan, he has standing to assert his claims in this action.

### b.    Ms. Ruegsegger

Defendants contend that Ms. Ruegsegger "repeatedly alleges that she is not a borrower and has no obligations on the loan[,]" and as a result, she "has no claim under" the TILA or HBOR. Mot. to Dismiss at 16, 21 (referencing FAC ¶¶ 35—36).

Plaintiffs allege in their TILA cause of action, that after a "mortgage loan" is transferred or assigned, the "new owner or assignee of the debt shall notify the borrower in writing[.]" 15 U.S.C. § 1641(g). As discussed *infra* (*see* Section III.B.4), the notice requirement only applies to the assignment of the underlying debt (*i.e.*, the Promissory Note), and not the security instrument (*i.e.*, the Deed of Trust). Thus, taking Plaintiffs' allegations as true, the Court finds that Ms. Ruegsegger has no standing to request

damages under TILA because she was not a party to the Promissory Note. *See Johnson v. First Federal Bank of California*, 2008 WL 2705090, at *3 (N.D. Cal. July 8, 2008) (plaintiff who was not named in the loan papers did not have standing to bring a TILA claim); *see also Wilson*, at *6 ("[P]laintiff has no standing to request rescission or damages under TILA because she was not a party to the loan contract[.]"); *see also Cleveland v. Deutsche Bank National Trust Co.*, 2009 WL 250017, at *2 (S.D. Cal. Feb. 2, 2009) (plaintiff lacks standing because he was not a borrower in connection with the loan).

        For purposes of qualifying as a "borrower" under the HBOR, California Civil Code Section 2920.5 limits the definition of "borrower" to "any natural person who is a mortgagor or trustor and who is potentially eligible for any federal, state, or proprietary foreclosure prevention alternative program offered by, or through, his or her mortgage servicer." Cal. Civ. Code § 2920.5(c)(1). The FAC alleges that Ms. Ruegsegger is a borrower "as that term is defined by the HBOR." FAC ¶ 163. The Court finds that this allegation is supported by the Deed of Trust, which identifies Ms. Ruegsegger as a "Borrower," and states that the "Borrower is the trustor under this Security Instrument." *Id*. Ex. B at 2; *see Keledjian v. Nationstar Mortgage LLC*, 2015 WL 12745841, at *4 (C.D. Cal. May 19, 2015) (plaintiff was a "borrower" under the statute because he was identified as a "borrower" under the deed of trust); *see also Hosseini v. Wells Fargo Bank, N.A.*, 2013 WL 4279632, at *5 (N.D. Cal. Aug. 9, 2013) (holding that a plaintiff who was not a party to the deed of trust was not a borrower under the HBOR); *see also Munguia v. Wells Fargo Bank, N.A.*, 2016 WL 3226002 (C.D. Cal. June 6, 2016) (Plaintiff "who is not named on the deed of trust, is not a 'borrower' under the HBOR, and therefore does not have an interest in the property that is protected by any of the HBOR provisions at issue in this lawsuit."). Thus, the Court concludes that Ms. Ruegsegger has Article III standing to assert a claim under the HBOR by virtue of the fact that she is identified as a "borrower" under the Deed of Trust.

        Accordingly, Plaintiffs' sixth cause of action for damages under TILA is DISMISSED WITH PREJUDICE only to the extent that it is asserted by Ms. Ruegsegger.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 17-0907-DOC (KESx)                                    Date: April 30, 2018
                                                                                          Page 25

B.      Issues Pertaining to the Claims Themselves

1.      Plaintiffs Lack Standing[5] to Raise Pre-Foreclosure Claims

Defendants argue that Plaintiffs lack standing to assert pre-nonjudicial foreclosure claims challenging the assignment of the loan documents or the foreclosing parties' right to proceed. Mot. to Dismiss at 10, 15—17. In response, Plaintiffs contend that the California Supreme Court's analysis in *Yvanova* demonstrates that Plaintiffs have standing, and further, under the HBOR Plaintiffs have an "express statutory right to address these issues pre-foreclosure[.]" Dkt. 62 at 14. The Court will address each argument in turn.

a.      Claims Arising Under the California Homeowner Bill of Rights

The HBOR was passed in 2012 "while California was still reeling from the economic impact of a wave of residential property foreclosures that began in 2007; The legislation sought to modify the foreclosure process to ensure that borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain available loss mitigation options." *Lucioni v. Bank of America, N.A.*, 3 Cal. App. 5th 150, 157 (Cal. Ct. App. Sept. 7, 2016) (internal quotation marks and citation omitted).

Plaintiffs set forth two HBOR causes of action in their FAC (first and tenth claims for relief), which allege violations of California Civil Code §§ 2924.17(a)-(b), 2923.55, and 2924(a)(6). *See* FAC at 51—56, 80—84.

(1)      Violation of Civil Code § 2924(a)(6)

California Civil Code § 2924(a)(6) provides:

> No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of

---

[5] Although California courts use the term "standing" to discuss this rule, it is better defined as the "right" or "authority" to bring a cause of action, and thus does not implicate this Court's subject matter jurisdiction. *See Williams v. Bank of America, N.A.*, 701 F. App'x 626, 628 n.2 (9th Cir. 2017) ("Although this rule has at times been labeled a 'standing' doctrine, it does not implicate our subject matter jurisdiction.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 17-0907-DOC (KESx)                          Date: April 30, 2018
                                                                        Page 26

> the beneficial interest. No agent of the holder of the beneficial
> interest under the mortgage or deed of trust, original trustee or
> substituted trustee under the deed of trust may record a notice
> of default or otherwise commence the foreclosure process
> except when acting within the scope of authority designated by
> the holder of the beneficial interest.

*Id*. § 2924(a)(6).

Plaintiffs allege that, under § 2924(a)(6), "had [D]efendants reviewed competent and reliable evidence before recording the [Notice of Default] and issuing the Notice of Trustee's Sale, they would have seen the errors and irregularities in the documents and ownership and would have recognized they did not have the legal right or standing to take the actions they took." FAC ¶¶ 297, 308. Plaintiffs further assert that they "have suffered actual economic damages[,]" and are "entitled to all relief provided by the HBOR[.]" *Id*. ¶ 309.

However, § 2924(a)(6) does not create a private right of action for either monetary damages or injunctive relief. *See Zeppeiro v. Green Tree Servicing, LLC*, 679 F. App'x 592, 593 (9th Cir. Mar. 6, 2017) ("The HBOR states several specific provisions where a homeowner is granted a private right of action to sue for monetary damages; Section 2924(a)(6) is not included."); *see also Lucioni*, 3 Cal. App. 5th at 159 ("The Legislature, however, did not provide for injunctive relief for a violation of Section 2924(a)(6)."); *see also Miller & Starr* § 13:185 (4th ed., Dec. 2017 update) ("The statutory damages remedy is applicable only for violation of Cal. Civ. Code §§ 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, 2924.17, and 2924.18.")

On this basis, the Court finds that Plaintiffs may not state an HBOR cause of action for wrongful initiation of foreclosure proceedings under Cal. Civ. Code § 2924(a)(6). Moreover, because the legal bar to asserting this cause of action is insurmountable, amendment would be futile. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment").

Accordingly, the Court DISMISSES WITH PREJUDICE Plaintiffs' tenth claim for relief to the extent that this claim is based on a violation of Cal. Civ. Code § 2924(a)(6).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                    Date: April 30, 2018
                                                     Page 27

(2)     *Violation of Civil Code §§ 2924.17(a)-(b) & 2923.55*

California Civil Code § 2924.17(a) requires that documents filed with respect to a foreclosure proceeding "shall be accurate and complete and supported by competent and reliable evidence." *Id*. § 2924.17(a). Section 2924.17(b) requires that "[b]efore recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information." *Id*. § 2924.17(b). Lastly, § 2923.55 provides that a mortgage servicer may not record a notice of default pursuant to § 2924 until thirty days after contact is made with the borrower to assess the borrower's financial condition and explore options for the borrower to avoid foreclosure, or thirty days after satisfying the due diligence requirement with regard to contacting or attempting to contact the borrower. *Id*. § 2923.55.

Plaintiffs allege in their FAC that "[t]he recording of the present [Notice of Default] by Caliber was required to be accurate and complete, and supported by competent and reliable evidence. Caliber also had to comply with the provisions contained within Civil Code Section 2923.55. They did neither." FAC ¶¶ 171, 305. Plaintiffs further allege that they "have suffered actual economic damages" and are "entitled to all relief provided by the HBOR[, including] injunctive relief pursuant to Section 2924.12 . . . with said injunction remaining in place until such time as the Defendants have corrected and remedied the various violations of the HBOR[.]" *Id*. ¶¶ 176, 309.

Under California Civil Code § 2924.12(a)(1), "[i]f a trustee's deed upon sale has not be recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.55 . . . or 2924.17." Cal. Civ. Code § 2924.12(a)(1). By contrast, § 2924.12(b) provides that "[a]fter a trustee's deed upon sale has been recorded, a mortgage servicer . . . shall be liable to a borrower for actual economic damages[.]" *Id*. § 2924(b). Thus, "[u]nder the HBOR, if the claimant's home has not yet been sold, his only available remedy is injunctive relief." *Hung Tran v. Select Portfolio Servicing, Inc.*, 2017 WL 6015317, at *11 (Cal. Ct. App. Dec. 5, 2017). Moreover, the HBOR provides a "safe harbor," which states that a servicer or beneficiary "shall not be liable for any violation that it has corrected and remedied prior to the recordation of the trustee's deed upon sale[.]" Cal. Civ. Code § 2924.12(c).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 17-0907-DOC (KESx)                                   Date: April 30, 2018
                                                                              Page 28

    As evidenced above, the FAC does not allege that the Property has been sold or
that any trustee's deed upon sale of the property has been recorded. *See generally* FAC.
Rather, it is alleged that "[o]n February 9, 2017, unbeknownst to Plaintiffs, a Notice of
Default and Election to Sell Under Deed of Trust, with a supporting Declaration of
Compliance was recorded by Caliber." *Id.* ¶ 139; *see also id.* Ex. FFF. However, as noted
earlier, this Notice of Default was voluntarily rescinded on September 20, 2017. *See* Def.
RJN Ex. D.[6]

    Plaintiffs may not seek remedies under Section 2924.12 that do not apply to the
present status of the property. Thus, in the Court's view, the rescission effectively moots
Plaintiffs' HBOR claims under Sections 2924.17(a)-(b) and 2923.55. *See Hung Tran*, at
*11 ("The trial court did not err in concluding rescission of the second notice of default
mooted Tran's cause of action."); *see also Pearson v. Green Tree Servicing, LLC*, 2014
WL 6657506, at *3 (N.D. Cal. Nov. 21, 2014) ("Having remedied the very violation that
the complaint sought to cure—rescission of the notice of default—there is no remaining
case or controversy for the court to adjudicate based on present circumstances, so
dismissal is proper.").

    As a result, Plaintiffs' first and tenth claims for relief are DISMISSED WITH
PREJUDICE, unless and until a notice of default and election to sell is recorded in
connection with the property. *See Crane v. Wells Fargo*, 2014 WL 1285177, at *7 (N.D.
Cal. Mar. 24, 2014) (noting that "since the notice of default has been rescinded and there
is no sale pending, plaintiff's claims that Wells Fargo violated those statutes must be
dismissed with prejudice"); *see also Karunaratne v. US Bank, N.A.*, 2016 WL 6698940,
at *5 (S.D. Cal. Nov. 15, 2016) (dismissing claims with prejudice until the plaintiff's
property was non-judicially foreclosed upon).

    **b.       The California Supreme Court's Holding in *Yvanova***

    In *Yvanova*, the California Supreme Court held that "a borrower who has suffered
a nonjudicial foreclosure does not lack standing to sue for wrongful foreclosure based on
an allegedly void assignment merely because he or she was in default on the loan and was
not a party to the challenged assignment. *Yvanova*, 62 Cal. 4th at 924. Thus, a borrower
may "base an action for wrongful foreclosure on allegations [that] a purported assignment

---

[6] Plaintiffs argue that the "most recent rescission of the most current Notice of Default . . . only serves to delay the
inevitable, as absent this litigation another attempt to foreclose will be made down the line . . ." Dkt. 62 at 20. The
Court finds this argument speculative. Moreover, Plaintiffs fail to meet their burden of demonstrating that "if
unchecked by litigation, the [D]efendant's allegedly wrongful behavior will likely occur or continue, and that the
threatened injury is certainly impending." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*, 528 U.S. 167, 190
(2000).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                                      Date: April 30, 2018
                                                                         Page 29

of the note and deed of trust to the foreclosing party bore defects rendering the assignment void." *Id.* at 923. However, *Yvanova* expressly left open the question of whether a borrower has standing in the pre-foreclosure context, as in the instant action.

After *Yvanova*, California's Fourth Appellate District addressed this issue in *Saterbak v. J.P. Morgan Chase Bank, N.A.*, 245 Cal. App. 4th 808 (Cal. Ct. App. Mar. 16, 2016), *reh'g denied* (Apr. 11, 2016), *review denied* (July 13, 2016), in which the court found that a borrower does not have standing to challenge an assignment of the deed of trust before a foreclosure sale takes place. The *Saterbak* court concluded that allowing the plaintiff to challenge the foreclosure under these circumstances "would result in the impermissible interjection of the courts into a nonjudicial scheme enacted by the California Legislature." *Id.* at 814. This Court also notes that the Fourth District's opinion does not stand alone. *See Hung Tran*, at *8 ("*Yvanova*'s holding only applies to cases where the trustee's sale has been completed."); *Traister v. Ocwen Loan Servicing, LLC*, 2017 WL 5988683, at *3 (Second District, Cal. Ct. App. Dec. 4, 2017) ("[A] borrower has no standing under California's nonjudicial foreclosure scheme to bring a preemptive challenge to the foreclosing entity's authority to initiate foreclosure.").

Moreover, the Ninth Circuit Court of Appeals and the majority of district courts in this circuit have declined to extend *Yvanova* to pre-foreclosure challenges, thereby adopting *Saterbak* and its progeny. *See, e.g., Petrovich v. Ocwen Loan Servicing, LLC*, 2017 WL 6330877, at *1 (9th Cir. Dec. 12, 2017) ("California law bars Petrovich's wrongful foreclosure claim because he filed suit before appellees' nonjudicial foreclosure of his home); *Dagres v. Countrywide Bank, N.A.*, 675 F. App'x 794, 795 (9th Cir. Jan. 26, 2017) ("California law does not permit Dagres to bring a preemptive suit to challenge defendants' authority to foreclose."); *Bryant v. J.P. Morgan Chase Bank, N.A.*, 671 F. App'x 985, 986 (9th Cir. Dec. 22, 2016) (relying on *Saterbank* to conclude that "Bryant lacked standing to bring a preemptive suit to challenge Chase's authority to foreclose."); *Wyman v. First American Title Insurance Company*, 2017 WL 512869, at *3 (N.D. Cal. Feb. 8, 2017) (collecting district court decisions).

Plaintiffs resist this conclusion, relying on *Lundy v. Selene Finance, LP*, 2016 WL 1059423, at *8 (N.D. Cal. Mar. 17, 2016) for the proposition that the California Supreme Court "would in fact find standing to raise a pre-foreclosure sale challenge" so long as the "pre-foreclosure plaintiff [has] a 'specific factual basis' in order to advance a pre-foreclosure claim." Dkt. 62 at 15. In *Lundy*, which was decided one day after *Saterbak*, the court reasoned that:

> The prejudice in the post-foreclosure context is, of course, more obvious than in pre-foreclosure, since a plaintiff has

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                                    Date: April 30, 2018
                                                                              Page 30

> suffered the definable injury of the loss of her property. But it
> is clear that *Yvanova*'s prejudice analysis does not depend on
> the existence of a completed foreclosure sale—rather, it
> focuses more broadly on the unfairness of requiring a plaintiff
> to be subjected to foreclosure proceedings by an entity that has
> no right to initiate those proceedings. For this reason, the Court
> concludes that *Yvanova*'s reasoning applies just as strongly to
> pre-foreclosure plaintiffs.

*Lundy*, at *11. However, this Court respectfully declines to follow the reasoning as stated
in *Lundy*, which failed to consider the *Saterbak* opinion. In fact, the majority of cases
since *Lundy* and *Saterbak* "have in essence concluded that the need to allow California's
statutory nonjudicial foreclosure process to run its course as designed, without judicial
interference, outweighs the concerns discussed by *Lundy* until the point of actual
foreclosure." *Davis v. U.S. Bank National Ass'n*, 2018 WL 1128089, at *7 (First District,
Cal. Ct. App. Mar. 2, 2018) (affirming trial court's conclusion that appellant failed to
demonstrate that he has standing to challenge the assignments of the promissory note and
deed of trust in the pre-foreclosure context). Accordingly, the Court disagrees with
Plaintiffs that the holding in *Yvanova* dictates a finding of standing in the pre-foreclosure
context. *See* Dkt. 62 at 19.

> ### c.      Claims Arising From Alleged Defective Assignments and
> ###         Wrongful Initiation of Foreclosure Proceedings

   The Court next examines whether the remaining causes of action in the FAC rise
or fall based on Plaintiffs' lack of standing to challenge the underlying loan's assignment
and Defendants' authority to initiate non-judicial foreclosure proceedings.

   The Court finds that Plaintiffs' Slander of Title, Quiet Title, Declaratory Relief,
and Set Aside/Rescind Notice of Default claims are all predicated on Plaintiffs' argument
that was rejected in *Saterbak*: that borrowers do not have standing to challenge an
assignment of the deed of trust before a foreclosure sale takes place. *See Saterbak*, 245
Cal. App. 4th at 808. For example, Plaintiffs' cause of action for Slander of Title alleges
that Defendants "harmed [Ms. Ruegsegger] by taking actions that cast doubt about [her]
ownership of the real property[, referencing] note endorsements and assignments of the
[Deed of Trust] which they recorded in an attempt to substantiate their ownership of the
loan." FAC ¶¶ 329, 336. Likewise, Plaintiffs' Quiet Title cause of action asserts that
"Defendants have no right to title or interest in the property and no right to entertain any
rights of ownership including the right to foreclose" and they seek to quiet title "because
the subsequent assignments and transfer of the [deed of trust] were fraudulent, void,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                                   Date: April 30, 2018
                                                                   Page 31

ineffective and without proper legal basis." *Id.* ¶¶ 367—368. Similarly, Plaintiffs' cause of action for Declaratory Relief requests "a judicial determination [as to] whether Caliber, U.S. [Bank,] and LSF9 have the legal right to foreclose on the Property[.]" *Id.* ¶ 409. Lastly, Plaintiffs' cause of action to Set Aside/Rescind Notice of Default asserts that, "[a]s it could not be conclusively shown that the note and [deed of trust] had been properly endorsed and assigned to LSF9 from the original lender, they could not provide a basis for a notice of default, or any attempt at nonjudicial foreclosure[.]" *Id.* ¶ 381.

        The Court also notes that besides the alleged defective assignments and alleged improper recording of the now rescinded Notice of Default (*i.e.*, initiation of foreclosure proceedings), Plaintiffs do not offer any other factual bases for these causes of action. Thus, these claims must be dismissed without leave to amend. *See Williams v. Bank of America, N.A.*, 2015 WL 6602403, at *5 (N.D. Cal. Oct. 30, 2015) ("Because Plaintiffs' quiet title and cancellation of instruments claim against U.S. Bank are based on the alleged defects in the assignment, the Court concludes that Plaintiffs lack standing to bring these claims against U.S. Bank."); *Moran v. GMAC Mortgage, LLC*, 2014 WL 3853833, at *6 (N.D. Cal. Aug. 5, 2014) (dismissing for lack of standing all claims arising from alleged assignment defects); *see also Yagman v. Bray*, 2015 WL 10433429, at *8 (C.D. Cal. Dec. 29, 2015) (dismissing claims for lack of standing based on inability to assert claims based on the alleged deficient assignments of the note and deed of trust); *Karunaratne*, at *5 (dismissing claims for relief that relied on the plaintiff's inability to challenge the validity of assignment); *Flores v. GMAC Mortgage, LLC*, 2013 WL 2049388, at *1—3 (N.D. Cal. May 14, 2013) (dismissing claims without leave to amend because they were "premised on plaintiffs' theory that no interest in the promissory note or the deed of trust was ever effectively transferred from the original lender to any of the defendants.")

        Accordingly, Plaintiffs' causes of action for Slander of Title (twelfth and thirteenth claims for relief), Quiet Title (fifteenth claim for relief), Set Aside/Rescind Notice of Default (sixteenth claim for relief), and Declaratory Relief (eighteenth claim for relief) are DISMISSED WITH PREJUDICE.[7]

### 2.    Claims Arising Under the California Rosenthal Fair Debt Collection Procedures Act

        Plaintiffs set forth three RFDCPA causes of action in their FAC. *See* FAC at 56—64, 85—88 (claims two, three, and eleven). Plaintiffs allege that Defendants Ocwen,

---

[7] While the Court recognizes that Defendants, either individually or collectively, advance alternative arguments as to why these claims (*e.g.*, claims one, ten, twelve, thirteen, fifteen, sixteen, and eighteen) should be dismissed with prejudice, because of the holding in this Order the Court need not address these alternative arguments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 17-0907-DOC (KESx)                          Date: April 30, 2018
                                                                        Page 32

Caliber, U.S. Bank, LSF9, Resi, Altisource, Wilmington Trust, and ARLP violated the
RFDCPA by engaging in improper debt collection activities, such as "misstating the
character, amount, or legal status of the debt they collected or sought to collect from
Plaintiffs[.]" *Id*. ¶¶ 186—187, 200, 319.[8] Defendants seek dismissal of Plaintiffs' claims
under the RFDCPA on the basis that the loan is not a "consumer debt," the conduct
alleged does not qualify as "debt collection activity," Ms. Ruegsegger is not a "debtor,"
and lastly, the statute of limitations bars Plaintiffs' claims. Mot. to Dismiss at 18—21;
Ocwen Motion at 6—7; Resi Motion at 4—5.

> a.    "Debtor," "Consumer Debt," and "Debt Collection
>       Activity" Under the RFDCPA

Under the RFDCPA, a "debtor" is "a natural person from whom a debt collector
seeks to collect a consumer debt which is due and owing or alleged to be due and owing
from such person." Cal. Civ. Code § 1788.2(h). A "debt collector" is defined as "any
person who, in the ordinary course of business, regularly, on behalf of himself or herself
or others, engages in debt collection." *Id*. § 1788.2(c). "Debt collection," in turn, is
defined as "any act or practice in connection with the collection of consumer debts." *Id*. §
1788.2(b). "Debt" is defined as "money, property or their equivalent which is due or
owing or alleged to be due or owing from a natural person to another person." *Id*. §
1788.2(d). And, "consumer debt" is defined as "money, property or their equivalent, due
or owing or alleged to be due or owing from a natural person by reason of a consumer
credit transaction." *Id*. § 1788.2(f). A "consumer credit transaction" is "a transaction
between a natural person and another person in which property, services or money is
acquired on credit by that natural person from such other person primarily for personal,
family, or household purposes." *Id*. § 1788.2(e).

The Court finds that both Mr. and Ms. Ruegsegger are "debtors" as defined under
the RFDCPA. *See id*. § 1788.2(h). Specifically as to Defendants' argument regarding Ms.
Ruegsegger, the Court finds that she "fits perfectly well into the second classification of
'debtor'—those who are alleged to have a consumer debt due and owing." *Masuda v.
Citibank, N.A.*, 38 F. Supp. 3d 1130, 1133 (N.D. Cal. 2014) (rejecting argument that an
individual can only qualify as a debtor if they actually owe a debt); *see also Baker v. G.C.
Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) (finding that the purpose of the Fair Debt
Collection Practices Act, similar to the RFDCPA, is to ensure "that every individual,

---

[8] The Court will not discuss the arguments raised by Defendants LSF9, ARLP, and Altisource, because these
Defendants have been dismissed without prejudice from this action. *See* Section III.A.2—3, *supra*.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                                   Date: April 30, 2018
                                                                    Page 33

whether or not he owes the debt, has a right to be treated in a reasonable and civil manner."); *See* FAC Ex. JJJ (notice of default letter addressed to Ms. Ruegsegger).

Further, a mortgage on a single family home, which is at issue in this case, is a "consumer debt," and the Plaintiffs are both debtors on that mortgage. *See Guccione v. JP Morgan Chase Bank, N.A.*, 2015 WL 1968114, at *14 (N.D. Cal. May 1, 2015) (rejecting defendant's argument that a mortgage loan cannot constitute a debt under the RFDCPA).

Although some courts have held that the mere allegation that a defendant foreclosed on a deed of trust does not implicate the RFDCPA, *see Reyes v. Wells Fargo Bank, N.A.*, 2011 WL 30759, at *19 (N.D. Cal. Jan. 3, 2011) (collecting cases), where the claim arises out of debt collection activities beyond the scope of the ordinary foreclosure process, a remedy may be available under the RFDCPA. *Id.* Here, Plaintiffs' RFDCPA claims arise out of debt collection activities beyond the scope of the foreclosure process, namely: "sending mortgage statements, sending collection letters stating that certain amounts are due or even overdue, [and] misrepresenting the . . . amount due[.]" Dkt. 62 at 21; *see also* FAC ¶¶ 104, 124 (referencing collection letters sent by Caliber that reflect an overstated amount). Thus, these alleged activities do not relate to the foreclosure process.

While the Court finds that Plaintiffs have sufficiently alleged facts demonstrating wrongful debt collection activities by Defendants Ocwen and Caliber (*see* FAC ¶¶ 81, 84, 104, 124), the Court also finds that Plaintiffs have failed to set forth any facts demonstrating improper debt collection efforts made by Defendants U.S. Bank, Resi, or Wilmington Trust. In their opposition, Plaintiffs appear to argue that their claims against these Defendants are based on the purported wrongful acts committed by Ocwen and Caliber. *See* Dkt. 57 at 2—3. In other words, Plaintiffs assert liability via an agency relationship. *Id.* However, as Defendants correctly point out, Plaintiffs' FAC is devoid of any facts indicating an agency relationship, and the Court further notes that this theory of liability cannot be raised for the first time in a response brief. *See Lennard v. Yeung*, 2012 WL 13006214, at *15 (C.D. Cal. Feb. 23, 2012) ("While the existence of an agency relationship is a factual matter, a complaint must plead facts indicating the existence of such a relationship to survive a motion to dismiss."); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1145 (N.D. Cal. 2010) ("It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss.") (internal quotation marks and citation omitted).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                                    Date: April 30, 2018
                                                                     Page 34

### b.      Statute of Limitations

Next, the Court addresses Defendants' statute of limitations argument. The RFDCPA has a statute of limitations of one year, which runs "from the date of the occurrence of the violation." Cal. Civ. Code § 1788.30(f). Plaintiffs filed the instant action on May 24, 2017 (*see generally* FAC), thus, Defendants argue that any RFDCPA claims would be barred insofar as they accrued prior to May 24, 2016. Mot. to Dismiss at 19.

First, the Court finds that Plaintiffs have sufficiently alleged wrongful debt collection activities by Defendant Caliber within the permissible limitations period. *See* FAC ¶¶ 104, 124; *see also id.* Exs. HH (Caliber collection letter dated June 3, 2016), XXX (Caliber letter dated October 20, 2016). However, the alleged facts do not support the same finding as to Defendant Ocwen.

Defendant Ocwen argues that it "stopped servicing the loan as of May 19, 2016, and there are no allegations that Ocwen attempted to collect on any debt after that date." Ocwen Motion at 7. The Court agrees with Ocwen on this point. However, Plaintiffs contend that the "discovery rule" tolls their claim against Ocwen, and that the "continuing violation doctrine" applies. *See* Dkt. 60 at 7, 9.

#### (1)     Discovery Rule

In order to rely on the discovery rule for delayed accrual of a cause of action, "[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (Cal. 2005).

Here, Plaintiffs contend that they "were finally able to learn the truth" about their claim once they were in receipt of "Ocwen's May 24, 2016 collection letter." Dkt. 60 at 12; *see also* FAC ¶ 101; *see id.* Ex. FF ("Final Escrow Account Disclosure Statement" dated May 24, 2016). Plaintiffs assert that this letter "revealed that the loan had been improperly serviced for years and that the amounts being sought from Plaintiffs were materially incorrect. Specifically, although the loan was an interest only loan for the first ten years, Ocwen repeatedly and consistently sent monthly mortgage statements to Plaintiffs seeking to collect payments consisting of principal and interest as if a principal payment was required." Dkt. 60 at 9.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                                      Date: April 30, 2018
                                                                                              Page 35

However, upon complete review of the FAC and the appendixed exhibits, the Court finds that this assertion cannot be true. Plaintiffs were on notice as early as April 27, 2015, that Ocwen sought the collection of escrow payments that included both principal and interest. *See* FAC ¶ 90; *see id*. Ex. X ("Escrow Analysis Results" indicating both principal and interest was collected). This Escrow Analysis Results statement squarely contradicts Plaintiffs' claim that that they could not have discovered Ocwen's wrongful collection activities until May 24, 2016 when they received the Final Escrow Account Disclosure Statement. Thus, the Court concludes that the discovery rule does not toll the accrual of Plaintiffs' RFDCPA claims.

### (2)    Continuing Violation Doctrine

Plaintiffs also contend that the continuing violation doctrine applies because the Final Escrow Account Disclosure Statement "was just the final overture in Ocwen's continuing violation of the [RFDCPA] which began shortly after it started servicing the loan in 2013, and, by itself, renders Plaintiffs' [RFDCPA] claim timely." Dkt. 60 at 9.

The continuing violation doctrine permits recovery "for actions that take place outside the limitations period if these actions are sufficiently linked to unlawful conduct within the limitations period[.]" *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 812 (Cal. 2001). "The key is whether the conduct complained of constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts. If there is a pattern, then the suit is timely if the action is filed within one year of the most recent violation[.]" *Komarova v. National Credit Acceptance, Inc.*, 175 Cal. App. 4th 324, 343 (Cal. Ct. App. June 25, 2009) (citation omitted).

Although Plaintiffs make an effort to frame the May 24, 2016 Escrow Disclosure Statement as a "collection letter," the Court finds that the statement does not amount to debt collection activity. Rather, in the Court's view, the statement is an informational letter regarding the current status of Plaintiffs' mortgage account—it is not a demand for payment and therefore does not amount to debt collection activity. *See Walcker v. SN Commercial, LLC*, 286 F. App'x 455, 457 (9th Cir. 2008) (holding that informational letters do not violate the FDCPA so long as they do not demand payment). This makes sense to the Court, given that Plaintiffs allege in their FAC that Defendant Ocwen had already transferred servicing of the loan to Defendant Caliber at the time that they sent the Escrow Disclosure Statement. *See* FAC ¶ 100 ("On April 29, 2016, Ocwen advised Plaintiffs that the servicing of the mortgage loan was being transferred from Ocwen to Caliber, effective May 19, 2016."). Thus, the Court concludes that without any allegation that Defendant Ocwen engaged in conduct that violated the RFDCPA within the statutory limitations period, Plaintiffs cannot assert that the continuing violation doctrine applies.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                    Date: April 30, 2018
                                                      Page 36

Accordingly, Plaintiffs' RFDCPA causes of action (claims two, three, and eleven) as asserted against Defendants Ocwen, U.S. Bank, Resi, Altisource, and Wilmington Trust are DISMISSED WITHOUT PREJUDICE.

### 3.    Claims Arising Under the Real Estate Settlement Practices Act

Plaintiffs set forth two RESPA causes of action in their FAC. *See* FAC at 64—65 (claims four and five). Plaintiffs allege that Defendants Ocwen and Caliber violated RESPA by improperly responding, or not responding at all, to several of their QWRs. *See* FAC ¶¶ 82—83, 86, 96, 106, 108, 120, 132, 211, 216; *see also id.* Exs. Q, JJ (Plaintiffs incorporate by reference into their FAC the QWRs they allegedly sent Ocwen and Caliber). Defendants move to dismiss these claims, arguing that Plaintiffs have not alleged enough facts to prove a RESPA violation by either Defendant, and further Plaintiffs have failed to allege actual damages or an entitlement to statutory damages. *See* Ocwen Motion at 8—13; *see also* Caliber Motion at 5—10.

#### a.    RESPA Violation

RESPA requires servicers of federally related mortgage loans to comply with certain disclosure requirements after receiving a QWR. 12 U.S.C. § 2605(e). A QWR is a "written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—

> (i) includes, or otherwise enables the servicer to identify the name and account of the borrower; and

> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."

*Id*. § 2605(e)(1)(B). A servicer is required to respond to a QWR from a borrower only to the extent that the QWR seeks "information relating to the servicing of [the] loan." *Id*. § 2605(e)(1)(A). "Servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan[,] and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." *Id*. § 2605(i)(3). Additionally, a loan servicer must "acknowledge receipt of the correspondence within 5 days" and must provide a response to the inquiry no later than 30 days after receipt of the QWR. *Id*. § 2605(e)(1)-(2). Lastly, RESPA includes a provision that requires a servicer to "respond within 10 business days to a request from a borrower to provide the identity,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 17-0907-DOC (KESx)                        Date: April 30, 2018
                                                                      Page 37

address, and other relevant contact information about the owner or assignee of the loan."
*Id*. § 2605(k)(1)(D).

Defendants maintain that the letters attached to the FAC "do not constitute valid
QWRs." Ocwen Motion at 9. Defendants point out that "many of their broad requests—
such as their requests for all assignments of the loan and for other information
challenging the validity of the loan, or their requests that Caliber accept an offer to settle
the loan—did not trigger any statutory duty to respond at all." Caliber Motion at 6.

The Court disagrees. While the referenced letters do request information outside
the scope of "information relating to the servicing of a loan," Plaintiffs also requested
information that was within scope—specifically, a complete payment history of the loan.
*See* FAC Exs. Q (letter sent to Defendant Ocwen on December 12, 2014, requesting "a
copy of the payment history of the loan") and JJ (letter sent to Defendant Caliber on July
27, 2016, requesting a copy of the payment history); *see Gyene v. Steward Financial Inc.*,
2013 WL 146191, at *10 n.8 (C.D. Cal. Jan. 11, 2013) (plaintiffs stated a valid QWR
requesting "the complete pay history from the date of origin"); *see also Fazio v. Experian
Information Solutions, Inc.*, 2012 WL 2119253, at *4 (N.D. Cal. June 11, 2012) (valid
QWR to the extent it asked for a "complete account history"). Moreover, "[e]ven if some
of Plaintiffs' requests do not relate to servicing, the letter can still be a QWR. Courts have
held that a letter that mixes servicing requests and non-servicing requests can constitute a
valid QWR." *Pendleton v. Wells Fargo Bank, N.A.*, 993 F. Supp. 2d 1150, 1153 (C.D.
Cal. 2013). The Court also finds that Plaintiffs have sufficiently alleged facts
demonstrating that Defendants did not respond in a timely manner, pursuant to either 12
U.S.C. § 2605(e)(1) or (2). *See* FAC ¶¶ 83, 85, 107.

Thus, based on the allegations in the FAC, the Court concludes that Plaintiffs have
sufficiently alleged a RESPA violation as to both Ocwen and Caliber.

**b.    Actual Damages**

Under RESPA, a plaintiff can recover either actual or statutory damages. 12
U.S.C. § 2605(f)(1). For a plaintiff to recover actual damages under RESPA, a number of
courts have held that a plaintiff must state allegations demonstrating pecuniary loss. *See
Lal v. American Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010)
(finding that in order to state a valid RESPA claim, alleged pecuniary damages must be
"a direct result of the failure to comply"); *see also Obeng-Amponsah v. Chase Home
Finance, LLC*, 624 F. App'x 459 (9th Cir. Aug. 20, 2015) (noting that borrower's RESPA
claim fails because his "allegations do not connect the alleged failure to respond to his
qualified written requests with any actual damages."). Accordingly, this pleading

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                                    Date: April 30, 2018
                                                                     Page 38

requirement has the effect of limiting Plaintiffs' RESPA causes of action to
circumstances in which Plaintiffs can show that either Ocwen or Caliber's failure to
respond caused them actual harm.

Here, the Court finds that Plaintiffs have failed to aver that the alleged RESPA
violations caused actual damages. In the FAC, Plaintiffs allege that they "are entitled to
recover their actual damages from" Defendants. *See* FAC ¶¶ 212, 217. However, "the
tenet that a court must accept as true all of the allegations contained in a complaint is
inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 129. Moreover, Plaintiffs
suggest in their opposition that Defendants' refusal to comply with their respective
RESPA obligations has forced them to "retain title and loan servicing consultants," and to
"engage in costly litigation[.]" Dkt. 59 at 9. However, the Court may not take into
account "additional facts asserted in a memorandum opposing the motion to dismiss,
because such memoranda do not constitute pleadings under Rule 7(a)." *Schneider v.
California Dept. of Corrections*, 151 F.3d 1194, 1201 n.1 (9th Cir. 1998) (internal
quotation marks and citation omitted). Accordingly, the Court finds that Plaintiffs'
RESPA claim for actual damages is insufficiently pleaded.

### c.      Statutory Damages

To recover statutory damages, a plaintiff must plead "a pattern or practice of
noncompliance with" RESPA. 12 U.S.C. § 2605(f)(1)(B). A "pattern or practice" has
been defined as "a standard or routine way of operating." *Lawther v. Onewest Bank*, 2010
WL 4936797, at *7 (N.D. Cal. Nov. 30, 2010). Further, a single alleged RESPA violation
is insufficient to establish a "pattern or practice." *Id.* at *20—21.

In this case, it appears to the Court that Plaintiffs have identified only one QWR
sent to each Defendant (Ocwen—December 12, 2014; Caliber—July 27, 2016). *See* FAC
¶¶ 82, 104; *see also id.* Exs. Q, JJ. Although Plaintiffs' counsel sent multiple follow-up
letters seeking a response to each QWR sent to Ocwen (*see* FAC Exs. R, U, CC) and
Caliber (*see* FAC Exs. LL, TT, VV), the Court finds that these follow-up letters do not
constitute separate actionable QWRs. The majority of the follow-up letters simply remind
Defendants of the original QWR that had not received a response, and/or demanded the
same information previously requested. *See e.g.*, FAC Ex. LL ("My request has been
outstanding for over 24 business days with no response from Caliber."), TT ("On July 27,
2016, I sent Caliber an email . . . It has been more than 60-days and Caliber has still
failed to provide a written response to my client's."), R ("On December 1, 2014, this
office served [Ocwen] with a QWR . . . By law you were obligated to acknowledge
receipt of our QWR within 5 days and then provide the requested information to us. To

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                                    Date: April 30, 2018
                                                                      Page 39

date, none of this has occurred . . .”), U (“On December 12, 2014 and January 16, 2015, I
sent Ocwen a RESPA QWR . . .).

      Because Plaintiffs have failed to allege facts demonstrating anything other than a
failure to respond to a single QWR, Plaintiffs cannot establish that either Ocwen or
Caliber engaged in a “pattern or practice” of RESPA violations. Accordingly, the Court
finds that Plaintiffs’ RESPA claim for statutory damages is insufficiently pleaded.

      In summary, the Court finds that while Plaintiffs have sufficiently pleaded a
RESPA violation, their RESPA claims still fail because they do not allege facts sufficient
to support their claim of damages. Thus, the Court DISMISSES WITHOUT PREJUDICE
Plaintiffs’ RESPA causes of action (claims four and five).

### 4.      Claim Arising Under the Truth In Lending Act

      Plaintiffs’ sixth cause of action alleges that Defendants Resi, Altisource, ARLP
and LSF9 violated TILA, pursuant to 15 U.S.C. § 1641(g), by failing to disclose “each
sale or transfer of [Plaintiffs’] mortgage loan.” FAC ¶ 224.[9] Defendant Resi moves to
dismiss this claim, arguing first that it is barred by the statute of limitations, and second,
that Plaintiffs have failed to plead facts supporting any concrete injury from the alleged
violation. Resi Motion at 5. The Court finds Resi’s statute of limitations argument
dispositive, and therefore does not reach the other argument.

      Section 1641(g) requires a creditor who obtains a mortgage loan by sale or transfer
to notify the borrower of the transfer in writing. 15 U.S.C. § 1641(g). More specifically,
“not later than 30 days after the date on which a mortgage loan is sold or otherwise
transferred or assigned to a third party, the creditor that is the new owner or assignee of
the debt shall notify the borrower in writing of such transfer,” and must include the date
of the transfer, contact information for the new creditor, and other relevant information.
*Id*. If the new creditor does not comply with this obligation, Congress authorizes the
borrower to sue the creditor to recover actual damages, a statutory penalty of up to
$4,000 in individual claims or up to $1 million in a class action, plus costs and attorney’s
fees. *Id*. § 1640(a). Any action for damages based on a violation of TILA must be filed
“within one year from the date of the occurrence of the violation[.]” *Id*. § 1640(e); *see
also King v. State of California*, 784 F.2d 910, 914 (9th Cir. 1986) (limitations period
generally runs from the date of consummation of the transaction).

---

[9] Having dismissed Defendant Altisource for lack of personal jurisdiction, and because Plaintiffs voluntarily dismiss
Defendants ARLP and LSF9, the Court only analyzes the arguments advanced by Defendant Resi in this section.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 17-0907-DOC (KESx)                                    Date: April 30, 2018
                                                                     Page 40

    In their FAC, Plaintiffs allege that "[o]n November 12, 2010 MTGLQ recorded an assignment of the [Deed of Trust] to Resi . . . [and on] Plaintiffs' information and belief, notice of the purported transfer of ownership was never provided to them by Resi, in violation of" TILA. FAC ¶ 66. Thus, according to Plaintiffs, Defendant Resi failed to provide Plaintiffs with written notice of this assignment by December 12, 2010—thirty days after the alleged assignment. *See id*. Plaintiffs brought this action on May 24, 2017, nearly six and a half years after the alleged violation. *See* Dkt. 1. Thus, it is clear from the face of Plaintiffs' FAC that Plaintiffs have exceeded the one-year statute of limitations and must therefore rely on equitable tolling to maintain their claim. *See* Dkt. 57 at 10 (arguing that equitable tolling applies because Plaintiffs were prevented from asserting a claim by wrongful conduct on the part of the Defendants).

    "[T]he doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *King*, 784 F.2d at 915. "Equitable tolling is generally applied in situations 'where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'" *O'Donnell v. Vencor, Inc.*, 465 F.3d 1063, 1068 (9th Cir. 2006) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). The Ninth Circuit has cautioned against resolving equitable tolling issues on a 12(b)(6) motion unless "the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see also Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206–07 (9th Cir. 1995).

    Defendant Resi contends that equitable tolling cannot apply because Plaintiffs "were on constructive notice of the publicly filed transfer [of the Deed of Trust] and 'had a reasonable opportunity to discover the underlying facts of the TILA violation within the limitations period.'" Dkt. 72 at 6 (citing *McQuinn v. Bank of America, N.A.*, 656 F. App'x 848, 850 (9th Cir. 2016)); *see also* FAC Ex. H (recorded assignment of the Deed of Trust dated November 12, 2010). In response, Plaintiffs argue that despite "repeated efforts" via QWRs sent to the mortgage loan servicers, they could not have known of the alleged TILA violation until they received a partial payment history from Caliber revealing many of the unknown ownership transfers. *See* Dkt. 57 at 11 ("[I]t was not until November 2016 that Plaintiffs learned of an alleged allonge to the Note executed by MTGLQ through which the Note was purportedly transferred to Resi."); *see also* Dkt. 62 at 31.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 17-0907-DOC (KESx)                                        Date: April 30, 2018
                                                                         Page 41

     The Court agrees with Defendant Resi. Once the Deed of Trust was recorded, Plaintiffs had constructive notice thereof. *See* Cal. Civ. Code § 2934 ("Any assignment of a mortgage and any assignment of the beneficial interest under a deed of trust may be recorded, and from the time the same is filed for record operates as constructive notice of the contents thereof to all persons . . ."); *see also Jehle v. Bank of America, N.A.*, 2014 WL 12564096, at *5 (C.D. Cal. June 10, 2014) (recording deed of trust provides "constructive notice" of the assignment to all persons). Thus, beginning on November 12, 2010, Plaintiffs had a reasonable opportunity to discover any violation of Section 1641(g) related to the assignment of the subject Deed of Trust before the one-year TILA limitations period expired. *See Sokol v. JP Morgan Chase Bank, N.A.*, 2013 WL 6623897, *2 (N.D. Cal. Dec. 16, 2013) ("Numerous courts from around the country have expressly rejected the application of equitable tolling in the context of § 1641(g) where the underlying assignment was recorded."). The Court therefore concludes that equitable tolling does not render Plaintiffs' TILA claim timely, specifically to the extent that it is based on the alleged assignment of the Deed of Trust.

     Nevertheless, the Court must note that Plaintiffs assert in their opposition that "assignments do not transfer ownership of the note and, although a deed of trust must follow a transfer of the note, it does not follow that assignment of the deed of trust also effectuates a transfer of the note." Dkt. 57 at 12 (citing Cal. U. Com. Code §§ 3104(a) and 3203(a)). The California Uniform Commercial Code provides that negotiable instruments cannot be transferred by trust deed assignment and, instead, only by delivery of the instrument. *See* Cal. U. Com. Code, §§ 3104(a) and 3203(a). Because the assignment of the Deed of Trust on November 12, 2010 says nothing about when the corresponding promissory note was assigned, the recorded assignment of the Deed of Trust could not support a reasonable inference that the promissory note was also assigned to Resi on November 12, 2010. *Compare* FAC Ex. H (recorded assignment) *with* Ex. ZZ (note allonge representing transfer of the promissory note, which is undated). Thus, the Court questions whether Plaintiffs would even have a viable TILA cause of action based solely on the assignment of the Deed of Trust alone.

     A plain reading of Section 1641(g) reflects that the disclosure obligation is only triggered when ownership of the "mortgage loan" or "debt" is transferred. *See* 15 U.S.C. § 1641(g). This section makes no mention of the instrument securing the debt, such as a deed of trust. In fact, the underlying debt and the security instrument are separate concepts. *See Connell v. CitiMortgage*, 2012 WL 5511087, at *8 n.14 (S.D. Ala. Nov. 13, 2012) ("Of course, notes and mortgages are conceptually distinct."); *see also Knowles v. HBSC Bank USA*, 2012 WL 2153436, at *2 n.4 (N.D. Ala. June 8, 2012) (explaining that the "Note is the obligation to pay borrowed money, [whereas] the mortgage merely

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                                    Date: April 30, 2018
                                                                                                    Page 42

creates a lien against the property as security for that obligation."). Moreover, §
1641(g)(2)'s definition of "mortgage loan" clearly distinguishes between the debt and the
security instrument. *See* 15 U.S.C. § 1641(g)(2). For example, a mortgage loan is defined
as "any consumer credit transaction that is secured by the principal dwelling of a
consumer." *Id*. "The first action is the creation of the debt through a 'consumer credit
action,' while a separate action—the creation of the security instrument—is necessary to
turn the debt into a mortgage loan." *Barr v. Flagstar Bank, F.S.B.*, 2014 WL 4660799, at
*3 (D. Md. Sept. 17, 2014) (affirming the distinction between a debt and a security
instrument under § 1641(g)(2)). Thus, "mortgage loan" is not a "catch-all term"—
"[i]nstead, it is synonymous only with 'debt,' thereby representing a conscious choice to
exclude transfers of only the security instrument from the reach of § 1641(g)." *Barr*, at *
3; *see also Robertson v. U.S. Bank, N.A.*, 831 F.3d 757, 762 (6th Cir. 2016) (notice
requirement only applies to an assignment of the promissory note); *Giles v. Wells Fargo
Bank, N.A.*, 519 F. App'x 576, 578 (11th Cir. 2013) (explaining that § 1641(g) only refers
to transfers of the debt, not the security instrument); *see also Vasquez v. U.S. Bank, N.A.*,
2017 WL 2464962, at *6 (Cal. Ct. App. June 7, 2017) (same).

        Further, Regulation Z, which implements TILA, applies § 1641(g) only to entities
that "acquir[e] legal title to the debt obligation." 12 C.F.R. § 1026.39(a)(1). Thus,
Regulation Z omits those persons who acquire title to the security interest, which
indicates that § 1641 only applies to holders of the debt. Accordingly, "§ 1641(g) and
Regulation Z combine to show that an assignee or transferee is not a new creditor within
the meaning of § 1641(g) unless he is the new owner of the debt secured by the
instrument in question." *Barr*, at *4. As a result, the notice requirement here would only
apply to the assignment of the underlying debt, not the instrument—the Plaintiffs' Deed
of Trust—that secures the transaction. In other words, this means that Plaintiffs cannot
assert a viable TILA violation against Defendant Resi if they only allege an assignment
of the Deed of Trust—which is precisely what they have done. *See* FAC ¶ 66.

        The Court, however, takes notice of an attached exhibit to Plaintiffs' FAC that
may evidence an assignment of the promissory note to Resi, thus Plaintiffs are permitted
leave to amend their TILA cause of action. *See* Ex. ZZ (undated allonge); *see also* Dkt.
57 at 11 ("[I]t was not until November 2016 that Plaintiffs learned of an alleged allonge
to the Note[.]"). Accordingly, Plaintiffs' sixth cause of action for damages under TILA
against Defendant Resi is DISMISSED WITHOUT PREJUDICE.

        **5.        Claims Under California's Unfair Competition Law**

        In their eighth and ninth causes of action, Plaintiffs assert that Defendants Caliber,
U.S. Bank, LSF9, Ocwen, Wilmington Trust, and ARLP are liable under the UCL,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 17-0907-DOC (KESx)                         Date: April 30, 2018
                                                          Page 43

pursuant to § 17200. *See* FAC at 69—79.[10] Defendant Caliber argues that Plaintiffs' UCL
claim fails because they have not pled facts satisfying the requirement that they lost
money or property as a result of the alleged UCL violation. *See* Def. Mot. to Dismiss at
21. Plaintiffs do not address this argument in their opposition, rather, Plaintiffs assert that
"the UCL claims are well stated" because they are "derivative of their HBOR, RFDCPA,
RESPA, and TILA claims." Dkt. 62 at 35.

        To state a claim under § 17200, a plaintiff must allege that a defendant's unlawful,
unfair, or fraudulent business practices caused them an economic injury. *See Kwikset
Corp. v. Superior Court*, 51 Cal. 4th 310, 320 (Cal. 2011). "Section 17204 restricts
private standing to bring a UCL action to 'a person who has suffered injury in fact and
has lost money as a result of the unfair competition.'" *Jenkins*, 216 Cal. App. 4th at 521
(citing Cal. Bus. & Prof. Code § 17204).

        The Court agrees with Defendant Caliber that Plaintiffs cannot properly assert
standing because they cannot establish causation. Specifically, they have not shown that
their alleged economic injury (*i.e.*, "legal fees and costs in order to prevent the wrongful
loss of their property") was caused by Caliber's unfair business practices (*i.e.*, wrongful
debt collection activities). *See* FAC ¶¶ 263, 265. The Plaintiffs' home would have been
subject to nonjudicial foreclosure regardless of the alleged deficiencies in the chain of
title or the wrongful debt collection activities by Caliber. The Court comes to this
conclusion because Plaintiffs do not dispute that they stopped making mortgage
payments in April 2010, which then caused the loan to go into default. FAC ¶ 50; *see
also Jenkins*, 216 Cal. App. 4th at 523 (noting that the plaintiff defaulted on her loan
before the defendant took any alleged wrongful action, and that it was the plaintiff's
default that triggered the enforcement of the power of sale clause in the deed of trust,
which subjected the plaintiff's home to nonjudicial foreclosure); *see also Williams*, 701
F. App'x at 629 (The plaintiffs "do not allege that they would be relieved of their
payment obligations under the deed of trust if U.S. Bank had not recorded documents as
it did, nor do the [plaintiffs] explain how any economic injury they suffered was caused
by Bank of America."). Thus, the Court finds that Plaintiffs fail to allege any facts in

---

[10] In this section the Court will only address the argument advanced by Defendant Caliber because the predicate
statutory violations asserted against the other Defendants have either been dismissed by the Court or Plaintiffs
voluntarily dismissed the Defendant. For example: (1) LSF9 and ARLP—these entities have been voluntarily
dismissed by Plaintiffs; (2) Wilmington Trust—HBOR, RESPA, and TILA causes of action were not asserted
against it, and the RFDCPA claim asserted against it has been dismissed without prejudice; (3) Ocwen—HBOR
claim was dismissed with prejudice, RFDCPA and RESPA claims were dismissed without prejudice, and TILA
claim was not asserted against it; (4) U.S. Bank—HBOR claim was dismissed with prejudice, RFDCPA claim was
dismissed without prejudice, and no RESPA or TILA claim asserted against it. Accordingly, the Court DISMISSES
WITHOUT PREJUDICE Plaintiffs' UCL claims asserted against Defendants Wilmington Trust, Ocwen, and U.S.
Bank.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                     Date: April 30, 2018
                                                                          Page 44

their FAC demonstrating a causal connection between Defendant Caliber's actions and their injury, and as a result Plaintiffs' UCL claim against Defendant Caliber is insufficiently pleaded.

Accordingly, Plaintiffs' UCL claims are DISMISSED WITHOUT PREJUDICE.

### 6.      Breach of Contract Claim

In their FAC, Plaintiffs bring a breach of contract cause of action against Defendants Caliber, Ocwen, and LSF9. *See* FAC at 67.[11] Plaintiffs allege that Defendant Caliber breached Paragraph 22 of the Deed of Trust. *Id.* ¶ 235; *see also id*. Ex. B at 14. Paragraph 22 requires the lender under the Deed of Trust to give notice to the borrower prior to accelerating repayment of the debt in the event of the borrower's breach. *Id.* ¶ 232; *see also id*. Ex. B at 14. The notice is required to inform the borrower of: "(a) the default; (b) the act required to cure the default; (c) a date, not less than 30 days from the date the notice is given to borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by [the] security instrument and sale of the property." *Id*. According to Plaintiffs, Defendant Caliber failed to provide this notice prior to when it recorded the Notice of Default on the property. *Id.* ¶ 235; *see also id*. Ex. FFF.

Defendant Caliber appears to argue that this claim is "moot because the nonjudicial foreclosure process has been rescinded[.]" Mot. to Dismiss at 17. Specifically, Caliber argues that "Plaintiffs' quarrel with the nonjudicial foreclosure process based on the recording of the Notice of Default no longer presents a live controversy." *Id*.

In the Court's view, however, the decision to rescind the Notice of Default in order to comply with the HBOR does not alleviate compliance with the agreement they made in the Deed of Trust, including Paragraph 22 notice requirements. *See Garfinkle v. Superior Court*, 21 Cal. 3d 268, 277 (Cal. 1978) ("[T]he power of sale exercised by the trustee on behalf of the lender/creditor in nonjudicial foreclosure is a right authorized solely by the contract between the lender and trustor as embodied in the deed of trust."). In other words, if a lender or mortgagee agrees to give a certain notice before a foreclosure, it does not matter whether it later rescinds the foreclosure. The lender must do that which it had agreed. Thus, taking the allegations as true and seen in the light most favorable to Plaintiffs, Plaintiffs do state a plausible claim that Defendant Caliber

---

[11] Because Plaintiffs voluntarily dismiss this "claim as against Ocwen without prejudice[,]" and because they dismiss Defendant LSF9 from this action, the Court will only analyze the arguments advanced by Defendant Caliber in this section. *See* Dkt. 60 at 4; *see also* Dkt. 62 at 35.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                                    Date: April 30, 2018
                                                                     Page 45

breached the Deed of Trust by failing to send them first a notice to inform them of the default and an opportunity to cure. *See* FAC ¶¶ 235, 238.

Accordingly, Defendants' Motion to Dismiss on this basis is DENIED.

### 7.    Negligence Claim

In their fourteenth cause of action for negligence, Plaintiffs allege that "according to California statute, Zieve had a duty to exercise reasonable care to ensure that prior to executing the attestation in the [Notice of Default] they reviewed competent and reliable evidence[.]" FAC ¶ 349, 351 (referencing Cal. Civ. Code §§ 2924.17(a) and 2923.55). Plaintiffs assert that Defendant Zieve breached that duty. *Id*. ¶ 350. Defendant Zieve moves to dismiss this claim asserted against it because as a "nonjudicial foreclosure trustee[, it] owes no duty of care[.]" Zieve Motion at 23.

The Court agrees with Defendant Zieve. In order to state a claim for negligence against Defendant Zieve, Plaintiffs must allege that (1) Zieve had a legal duty to use due care; (2) Zieve breached that duty; and (3) the breach was the proximate or legal cause of the resulting injury. *See Ladd v. County of San Mateo*, 12 Cal. 4th 913, 917 (Cal. 1996).

However, "California courts have refused to impose duties on the trustee other than those imposed by statute or specified in the deed of trust." *Heritage Oaks Partners v. First American Title Ins. Co.*, 155 Cal. App. 4th 339, 345 (Cal. Ct. App. Sept. 19, 2007*); see also I.E. Associates v. Safeco Title Ins. Co*., 39 Cal. 3d 281, 287 (Cal. 1985)(stating that the "rights and powers of trustees in nonjudicial foreclosure proceedings have long been regarded as strictly limited and defined by the contract of the parties and the statutes."); *see also Bascos v. Federal Home Loan Mortgage Corp*., 2011 WL 3157063, at *7 (C.D. Cal. July 22, 2011) ("[A] trustee under a deed of trust owes a plaintiff no duty beyond its duties contained in Cal. Civ. Code §§ 2924, *et seq*."). Since Defendant Zieve owes no duty to Plaintiffs except as statutorily prescribed under the HBOR, and because the Court determined in Section III.B.1.a, *supra*, that Plaintiffs cannot set forth any claims under the HBOR at this time, Plaintiffs have pled neither duty nor breach of duty with respect to Defendant Zieve under a common law negligence theory.

Accordingly, Plaintiffs' negligence cause of action, as asserted against Defendant Zieve, is DISMISSED WITHOUT PREJUDICE.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                                      Date: April 30, 2018
                                                                                                     Page 46

## 8.      Fraudulent Concealment

In their FAC, Plaintiffs allege that Defendant Ocwen "fraudulently concealed from Plaintiffs the fact that it had manufactured and recreated essential chain of title documents out of whole cloth in order to close significant gaps in the ownership chain of which they were aware[.]" Dkt. 60 at 22; *see also* FAC ¶¶ 389—392. Defendant Ocwen argues that Plaintiffs fail to state a claim for fraudulent concealment because Plaintiffs have not plausibly pleaded that they would have acted differently had they known the truth regarding the alleged concealed facts and that they suffered any injury. *See* Dkt. 66 at 21 (Plaintiffs "cannot establish that they relied on the endorsement referenced in the complaint to their detriment[,]" and "non-existent damages are also fatal to this claim[.]").

"The required elements for fraudulent concealment are: (1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact.*" Graham v. Bank of America, N.A.*, 226 Cal. App. 4th 594, 606 (Cal. Ct. App. May 23, 2014) (citation omitted). Moreover, allegations of fraudulent concealment "must be pleaded with specificity rather than with general and conclusory allegations." *Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230, 248 (Cal. Ct. App. Aug. 10, 2011); *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

Justifiable reliance can be proved in a fraudulent concealment case "by establishing that had the omitted [or concealed] information been disclosed, the plaintiff would have been aware of it and behaved differently." *Boschma*, 198 Cal. App. 4th at 251 (citation omitted); *see also Hoffman v. 162 North Wolfe LLC*, 228 Cal. App. 4th 1178, 1194 (Cal. Ct. App. July 15, 2014) ("A plaintiff establishes reliance when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction.") (quotation marks and citation omitted).

Plaintiffs assert in their FAC that had they been in receipt of the concealed information they "would have behaved differently with respect to the loan and the attempts being made to collect upon it and foreclose upon the property it secured." FAC ¶ 393. Plaintiffs further assert that "concealment of the true facts precluded and negatively

impacted Plaintiffs' ability to ascertain who may have had adverse ownership claims to the property[.]" *Id*. Lastly, Plaintiffs assert that "[a]s a direct and proximate result, Plaintiffs have suffered damages in an amount to be proven at trial[.]" *Id*. ¶ 396.

Plaintiffs' conclusory statement that they "would have behaved differently" falls short of meeting the heightened pleading requirement. *See Boschma*, 198 Cal. App. 4th at 248; *see also* Fed. R. Civ. P. 9(b). Plaintiffs do not plead facts demonstrating what different course of action they would have taken had they known at that time of the alleged fabricated endorsements. *See Kemp v. Wells Fargo Bank, N.A.*, 2017 WL 4805567, at *15 (N.D. Cal. Oct. 25, 2017) (finding plaintiff failed to allege with specificity facts demonstrating that plaintiff would have taken a different course of action or how the defendant's conduct prevented her from taking that different course of action). Moreover, Plaintiffs do not allege with specificity their damages or provide facts that directly link the alleged concealment with their damages. *See Graham*, 226 Cal. App. 4th at 608 (finding that plaintiff did "not allege a sufficient nexus between the alleged misrepresentations or concealment and his alleged economic harm.").

Accordingly, because Plaintiffs have not adequately pled that their harm arose from a reliance on the alleged concealment, or pleaded with specificity their damages, Plaintiffs' fraudulent concealment claim is DISMISSED WITHOUT PREJUDICE.

## 9.     Class Allegations

Plaintiffs assert eight class claims, including violations of: the HBOR, RFDCPA, RESPA, TILA, UCL, and breach of contract. *See* FAC at 1—2. Defendants move to strike these class allegations pursuant to Federal Rule of Civil Procedure 12(f), on the grounds that Plaintiffs' proposed three classes cannot satisfy the requirements of Rule 23, and because individual issues would predominate over common issues should a class be certified. *See generally* Mot. to Strike. Plaintiffs oppose this motion primarily on the ground that striking class allegations prior to discovery is an extraordinary measure that prematurely determines the issue of class certification. *See* Dkt. 55 at 7.

As stated earlier, class allegations may be stricken at the pleading stage. *See Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 212 (9th Cir. 1975). However, motions to strike class allegations are generally disfavored because a motion for class certification is a more appropriate vehicle for testing the validity of class claims. *See Thorpe*, 534 F. Supp. 2d at 1125. In fact, such motions are granted only where "the complaint demonstrates that a class action cannot be maintained." *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010). Thus, the "better and more advisable practice" for district courts at the motion to strike and pre-certification stage "is to afford

Case No. SA CV 17-0907-DOC (KESx)                              Date: April 30, 2018
                                                                          Page 48

the litigants an opportunity to present evidence as to whether a class action [is] maintainable. And, the necessary antecedent to the presentation of evidence is, in most cases, enough discovery to obtain the material, especially when the information is within the sole possession of the defendant." *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977); *see also Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) ("Our cases stand for the unremarkable proposition that often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted."). Accordingly, discovery is warranted where it will resolve factual issues necessary for the determination of whether the action may be maintained as a class action. *See Kamm*, 509 F.2d at 210; *see also Vinole*, 571 F.3d at 942.

Here, Defendants have yet to file their respective answers, and discovery has not commenced in this action. In their opposition, Plaintiffs "submit that additional investigation conducted to date suggests that discovery will disclose additional common evidence in support of Plaintiffs' class claims[, and such evidence] relating to Defendants' actions, policies and procedure relating to the foreclosure are likely in the sole possession of Defendants." Dkt. 55 at 7—8. More concretely, Plaintiffs point out that their preliminary investigation "suggests that the primary cause of the serial and systematic problems and errors lies in Ocwen's deficient proprietary servicing platform, known as RealServicing, used by Ocwen to service all residential mortgage loans. Plaintiffs anticipate that discovery will demonstrate that Ocwen knew of the deficiencies of RealServicing, and that those deficiencies were a 'commonality' across all of its business units." *Id*. at 2.

Upon review of the FAC and the parties' briefings in both the Joint Motion to Strike and Joint Motion to Dismiss, the claims and allegations at issue in this case appear to be of a type that may not be suitable for class certification. Nonetheless, discovery has not commenced and the Court is persuaded by Plaintiffs that the Defendants may be in possession of evidence that might impact class certification. Therefore, it is premature to decide the merits of any purported class before at least some discovery has been conducted.

Accordingly, Defendants' Joint Motion to Strike the class allegations is DENIED WITHOUT PREJUDICE to raising these issues again at the class certification stage.

## IV.    Disposition

For the reasons explain above, the Court GRANTS IN PART and DENIES IN PART Defendants' Joint Motion to Dismiss, DENIES Defendants' Joint Motion to Strike, GRANTS IN PART Ocwen's Motion to Dismiss, GRANTS IN PART Resi's

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0907-DOC (KESx)                                        Date: April 30, 2018
                                                                         Page 49

Motion to Dismiss, and GRANTS IN PART and DENIES IN PART Zieve's Motion to
Dismiss.

        The Court DISMISSES WITHOUT PREJUDICE Defendants LSF9, Altisource,
and ARLP from this action.

        The Court DISMISSES WITH PREJUDICE: (1) Plaintiffs' first claim for
violation of the HBOR; (2) Plaintiffs' sixth claim for violation of the TILA, only to the
extent it is asserted by Ms. Ruegsegger; (3) Plaintiffs' tenth claim for violation of the
HBOR; (4) Plaintiffs' twelfth claim for slander of title; (5) Plaintiffs' thirteenth claim for
slander of title; (6) Plaintiffs' fifteenth claim for quiet title; (7) Plaintiffs' sixteenth claim
for set aside and rescind Notice of Default and Notice of Trustee's Sale; and (8)
Plaintiffs' eighteenth claim for declaratory relief.

        The Court DISMISSES WITHOUT PREJUDICE: (1) Plaintiffs' second claim for
violation of the RFDCPA, only to the extent it is asserted against U.S. Bank; (2)
Plaintiffs' third claim for violation of the RFDCPA, only to the extent it is asserted
against Ocwen, Resi, and Wilmington Trust; (3) Plaintiffs' fourth claim for violation of
RESPA; (4) Plaintiffs' fifth claim for violation of RESPA; (5) Plaintiffs' sixth claim for
violation of TILA, only to the extent it is asserted by Mr. Ruegsegger and asserted
against Resi; (6) Plaintiffs' eighth claim for violation of the UCL, only to the extent it is
asserted against Caliber; (7) Plaintiffs' eleventh claim for violation of the RFDCPA, only
to the extent it is asserted against Ocwen, Resi, and Wilmington Trust; (8) Plaintiffs'
fourteenth claim for negligence, only to the extent it is asserted against Zieve; and (9)
Plaintiffs' seventeenth claim for fraudulent concealment.

        Plaintiff may file a second amended complaint, if desired, **on or before May 14,
2018**.

        The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                                          Initials of Deputy Clerk: djl
CIVIL-GEN